McMILLAN v. NATIONAL WOOL WARE-
HOUSE & STORAGE CO.

FALK MERCANTILE CO., Limited, et al.
v. SAME.

Circuit Court of Appeals, Ninth Circuit.
October 8, 1928.

Rehearing Denied November 30, 1928.

Nos. 5348, 5349.

Conley, Conley & Conley, of Fresno, Cal., and Richards & Haga, of Boise, Idaho, for plaintiff in error.

Richards & Haga, of Boise, Idaho, for appellants Boise City Nat. Bank, McMillan, and St. Clair, trustee.

Chas. M. Kahn, of Boise, Idaho, for appellant Falk Mercantile Co.

Dean Driscoll, of Boise, Idaho, for defendant in error and appellee.

Before GILBERT and RUDKIN, Circuit Judges, and ST. SURE, District Judge.

PER CURIAM. The McMillan Sheep Company, Limited, was organized as a corporation under the laws of the state of Idaho in 1909, and the entire authorized capital stock of $100,000 was issued to Thomas McMillan. In 1910 McMillan sold and transferred $75,000 par value of the capital stock to Hugh Sproat, a nephew, and in 1917, or 1918, the remaining $25,000 par value to two other nephews, Dave and Rex Sproat. Since the date of these transfers the three nephews have been the owners of the entire capital stock of the corporation, except one qualifying share held by a director. Hugh Sproat has been director, president, treasurer, and general manager of the corporation at all times since he became a stockholder; Dave Sproat has at all times been director and secretary; and Rex Sproat has at all times been director and vice president. At the time of the purchases the three Sproats executed their promissory notes to McMillan for the purchase price of the stock. Some time prior to the year 1921, Hugh Sproat indorsed on his individual note to McMillan the name of the sheep company; but this indorsement was made without consideration, and it does not appear that it was made with the knowledge or consent of any stockholder, director, or officer of the corporation other than himself. In 1921 the Hugh Sproat note to McMillan was renewed for two years for the balance of $15,000 then due, and there was again indorsed on the renewal note the name of the sheep company; but, as before, the indorsement was without consideration, and it does not appear that it was made with the knowledge or consent of any stockholder, officer, or director of the corporation other than Hugh Sproat.

On April 22, 1922, the sheep company executed its promissory note in the sum of approximately $7,500, payable November 1, 1923, to the National Wool Warehouse & Storage Company, and on the same day a like note in the sum of $8,000, payable November 1, 1924. Since the execution of these notes there has been paid on the Hugh

Sproat note to McMillan the sum of approximately $12,000, on the Dave Sproat note to McMillan the sum of approximately $5,000, and on the Rex Sproat note to McMillan the sum of approximately $1,400. All of these payments on the individual notes of the three Sproats were made from funds belonging to the sheep company and were made by checks drawn in favor of McMillan against the Boise City National Bank; such checks being signed by the sheep company through Hugh Sproat, its president. At the time the several payments were made, McMillan had actual knowledge that the payments so made were from funds belonging to the sheep company and had like knowledge that the three Sproats were the officers, directors, and stockholders of the sheep company. The sheep company never declared or paid a dividend and at all times since September 8, 1924, has been insolvent, and McMillan at all times had knowledge of such insolvency. Such is a brief summary of the findings of the court. The National Wool Warehouse & Storage Company commenced an action in the court below against the sheep company on the two promissory notes in its favor, executed April 22, 1922, and in that action a writ of attachment was sued out and was served on McMillan among others, accompanied by a notice of garnishment. Issues were made up in the attachment or garnishment proceeding under the local law of the state, and the court below, after finding the facts as above, entered judgment in favor of the National Wool Warehouse & Storage Company against the sheep company by default and against McMillan, as garnishee, after trial.

The principal property attached consisted of a band of 4,500 head of sheep, which were covered by two chattel mortgages and an executory contract of sale. In order not to defeat the sale of the sheep under the executory contract, the parties stipulated that the balance of the purchase price of the sheep should be deposited in the Boise City National Bank, one of the mortgagees, as trustee, to be distributed to claimants as their rights and priorities might appear; no claimant to gain or lose any advantage because of the substitution of the fund for the sheep. The sale of the sheep was consummated and the money deposited pursuant to stipulation, and a suit in equity was commenced by the attaching creditor claiming certain sums by virtue of the attachment and the stipulation in question. By consent of parties the action at law and the suit in equity were tried together and a decree in favor of the plaintiff was entered in the equity suit. The judgment in the law action and the decree in equity have been brought here for review and were submitted on the same briefs and arguments but on different records.

■ The special findings of the court below in the law action were not excepted to, nor was there any exception to the refusal of the court to find as requested, so that we may not look beyond the facts as found. But in any event the findings are amply supported by the testimony.

■■ A multitude of questions have been discussed in the briefs and arguments, but the question for decision is a narrow one at best and is not difficult of solution. The question is simply this: May the officers and stockholders of a private corporation withdraw the corporation funds to pay their private debts, thus rendering the corporation insolvent and unable to meet its obligations to its creditors? To this question there can be but one answer. As well said by the court below: "To recognize the right of the Sproats to pay for their stock by obligating the company as an indorser or withdrawing the requisite funds from its capital account would be in effect to hold that a corporation may, without winding up its affairs in the manner prescribed by law, and in disregard of the claims of creditors, distribute to its stockholders its entire capital stock, a procedure not only invalid under recognized principles of legal right, but denounced by the criminal statutes of the state." The payments made to McMillan from the funds of the corporation on account of the private debts of the Sproats were therefore wholly unauthorized and illegal, and McMillan accepted the payments with full knowledge of that fact. The right of creditors to follow the funds under such circumstances is beyond question. But it is earnestly insisted that this must be done by a plenary independent suit in equity and not by garnishment in an action at law. With this contention we are unable to agree. The garnishment statute of Idaho is broad and liberal. As said by the Supreme Court of the state in Eagleson v. Rubin, 16 Idaho, 92, 101, 100 P. 765, 768: "An examination of the statute under consideration discloses that full opportunity is given the garnishee to be heard and to litigate and contest his rights and that the procedure is governed by the same rules as are applied to similar cases. He is given every right granted to a defendant in ordi-

nary actions. His rights are in no way abridged or circumscribed under the statute. We are unable to discover any respect in which this statute is in violation of the provisions of the constitution of this state or the constitution of the United States."

Little need be said as to the appeal from the decree in equity. The questions there involved are questions of fact only, and the findings of the court are amply supported by the testimony. We have considered all assignments of error, but no useful purpose would be subserved by further discussion. Suffice it to say that we find no error in the record or in the allowance of interest on the sums diverted from the date of their diversion.

The judgment and the decree are therefore affirmed.