**EDWARD HINES WESTERN PINE CO. v. FIRST NAT. BANK OF CHICAGO et .al.**

**FIRST NAT. BANK OF CHICAGO v. MEIKLE.**

**No. 4638.**

Circuit Court of Appeals, Seventh Circuit.

Oct. 4, 1932.

506

508

John N. Ott and Homer J. Livingston, both of Chicago, Ill., for appellant.

Sidney Teiser (of Teiser & Keller), of Portland, Or., and Joseph B. Fleming and Adrian L. Hoover, both of Chicago, Ill., for appellee.

Before ALSCHULER and SPARKS, Circuit Judges, and WHAM, District Judge.

WHAM, District Judge (after stating the facts as above).

Section 67e of the Bankruptcy Act of 1898, as amended (11 USCA § 107(e), provides that, if a debtor, within four months of the filing of the petition in bankruptcy, makes any transfer or assignment "with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them," such transfer or assignment shall be null and void except as to purchasers in good faith and for a present fair consideration, and it shall be the duty of the trustee to recover the same.

That the assignment by the bankrupt to the appellant of the sum in controversy was made within four months prior to the filing of the petition in bankruptcy is admitted and not in controversy. That the bankrupt was insolvent on said date cannot be questioned, if the claims of the Export Company and the Milwaukee Company filed and allowed against the estate of the bankrupt in United States District Court of Oregon, were valid claims. Appellant, being in no way a party to that proceeding and not having intervened or entered its appearance therein, is not bound by the allowance of the claims in that court, but the burden in this case rests upon appellee to prove the validity of those claims against the bankrupt before they can be considered here as affecting the solvency of the bankrupt. Gratiot County State Bank v. Johnson, 249 U. S. 246, 39 S. Ct. 263, 63 L. Ed. 587.

Appellant insists that the evidence shows that the bankrupt had no debts to the Milwaukee Company and the Export Company aside from those of $30,319.80 and $40,441.-71, respectively, which were paid from the proceeds of the sale to the Pine Company, and that the bankrupt was, in fact, solvent on September 15, 1928; that the transactions upon which are based the claims for the additional sums of $526,764.86 and $70,000 which the court below found to be due from the bankrupt to the Milwaukee Company and the Export Company, respectively, were transactions, not between those companies and the bankrupt, but entirely between said compa-

nies and Fred Herrick, individually; that the money, funds, and credits represented by said sums were advanced to Fred Herrick individually by said companies, and he, solely, is liable therefor to the Milwaukee and Export Companies; that, if he advanced such money, funds, and credits to the bankrupt, or caused the same to be used for its benefit, he did so after the same had become his individual assets and the bankrupt became indebted solely to him; that the bankrupt has paid Fred Herrick in full for the moneys and funds so advanced by him.

■ The appellant's contentions in this respect are not upheld by the facts disclosed by the evidence. Fred Herrick owned substantially all the stock in, was president of, and dominated each of said three corporations. Taking advantage of this situation, he used, or caused to be used, the funds of the Milwaukee Company and the Export Company to pay the expenses of and carry on the construction work of the bankrupt. The assets sold by the bankrupt to the Pine Company were paid for in no small measure by the money thus diverted to the bankrupt from those companies. Not only did Fred Herrick, as president of bankrupt, divert the funds from said companies to the bankrupt, but the other officers of the bankrupt had sufficient knowledge of the source of the funds to put them on notice that they were not in fact the personal funds of Fred Herrick, but were being diverted by him from the Milwaukee Company and the Export Company. The situation disclosed by the evidence is well stated by the court below, as follows: "The rule which would enable the Herrick Lumber Company to receive through its president this money which he had taken wrongfully from other companies controlled by him and obtain the benefit of the use of the money without being chargeable with the president's knowledge as to real ownership of the funds so diverted, is repugnant to equity. Moreover, aside from the president's knowledge, the real character of the transactions with the Milwaukee and Export companies was brought home to the Herrick Lumber Company by circumstances which put it on inquiry and precluded it from closing its eyes and saying that it did not know what could easily have been found out."

The corporation receiving the benefit of the wrongfully diverted funds became the debtor of and liable for such funds to the corporations from which the funds were diverted. Brown v. Pennsylvania Canal Co. (D. C.) 229 F. 444, affirmed 235 F. 669 (C.

C. A. 3); McMillan v. National Wool Warehouse & Storage Co., 28 F.(2d) 793 (C. C. A. 9); Guay v. Holland System Hull Co., 244 Mass. 240, 138 N. E. 557; Corey et al. v. Independent Ice Co., 226 Mass. 391, 115 N. E. 488.

■ The fact that the bankrupt gave credit on its books to Fred Herrick for the funds at the time they were used for its benefit and subsequently permitted him to use or withdraw part or all thereof for personal uses cannot affect bankrupt's liability to the corporations from which the funds were wrongfully diverted for the bankrupt's benefit.

■ The contention that the claims were barred by the laches of the Milwaukee Company and the Export Company cannot be maintained, in view of the fact that the actions of those companies were at all times controlled by Fred Herrick who, for his own selfish purposes, diverted the funds in question from them to the use of the bankrupt. Young v. Columbia Land Co., 53 Or. 438, 446, 99 P. 936, 101 P. 212, 133 Am. St. Rep. 844.

■ The claims in question, approximating a total of $600,000, being valid subsisting claims against the bankrupt on September 15, 1928, the bankrupt was unquestionably insolvent and the officers and directors of the bankrupt, knowing or having had notice of the indebtedness, must be held to have had knowledge of the bankrupt's insolvency.

■ Not only was the bankrupt insolvent at the time of the assignment in controversy with the knowledge of its officers and directors, but they authorized and made the assignment, not for the benefit of the bankrupt, but for the personal benefit of Fred Herrick, president of the bankrupt. In the transaction their sole purpose was to gain control of Fred Herrick's personal guaranty of the Cœur d'Alene notes held by appellant to forestall threatened action thereon against Fred Herrick. The evidence shows that the notes of the Cœur d'Alene Company in themselves were of little or no value, and the officers and directors of the bankrupt knew this. The financial condition of the Cœur d'Alene Company had been steadily growing worse, its plant had been or was about to be closed down, its assets were mortgaged to the approximate limit of their then value, and as early as April or May, 1928, J. W. Girard, an officer and director of the bankrupt and active manager of the Cœur d'Alene Company, had informed H. P. Snyder, a vice president of appellant, who had gone to Idaho to

investigate the possibilities of collecting the notes, of the desperate financial condition of the company, and that the notes held by appellant could never be paid by the company. They also knew that Fred Herrick was financially embarrassed, could not pay all of his debts, and that he would be in control of his guaranty of said notes if acquired by the bankrupt. The inevitable effect of the assignment by the bankrupt of $125,000 in cash for the notes and guaranties on September 15, 1928, under the circumstances, was to hinder, delay, and defraud the bankrupt's creditors. Its officers and directors having authorized and made the assignment with knowledge of the facts and circumstances disclosed by the evidence as above set forth, it must be held to have intended the necessary consequences of their acts, which were to hinder, delay, and defraud its creditors. Dean v. Davis, 242 U. S. 438, 443, 37 S. Ct. 130, 61 L. Ed. 419; Lovett v. Faircloth, 10 F.(2d) 301 (C. C. A. 5).

To render null and void under section 67e of the Bankruptcy Act a conveyance, transfer, or assignment made by a bankrupt with intent to delay, hinder, or defraud its creditors, except as to purchasers in good faith and for a present fair consideration, it is not necessary to prove that such intent was shared by the transferee. Bankruptcy Act, § 67e, 11 USCA § 107 (e); Sherman v. Luckhardt, 67 Kan. 682, 72 P. 277; In re Brown (D. C.) 291 F. 430, 433; Remington on Bankruptcy (3d Ed.) vol. 4, § 1931, pp. 775, 776; Collier on Bankruptcy (13th Ed.) vol. 2, p. 1559.

The burden was on the appellant, if it would save the transaction under said section 67e, to prove that it was a purchaser in good faith and for a present fair consideration. Remington on Bankruptcy (3d Ed.) vol. 4, §§ 1931, 1933. Appellant has failed to meet this burden. It deliberately created the immediate situation that caused the formation of the fraudulent intent on the part of the officers and directors of the bankrupt. After the fraudulent intent on their part became apparent to the appellant by their offer wrongfully to purchase the Cœur d'Alene notes and guaranties with funds of the bankrupt for the protection of Fred Herrick, personally, appellant knowingly participated in the plan.

The chief consideration passing from appellant to the bankrupt in the transaction was Fred Herrick's guaranty purchased by the bankrupt, as appellant knew, for the personal benefit of Fred Herrick. As pointed out by the trial court, personal benefit to Fred Herrick was not a proper consideration, under the circumstances, for the transfer of the bankrupt's property, and "it is impossible to determine how much of the $125,000 was paid for the Cœur d'Alene notes and how much for the benefit that was to accrue to Fred Herrick." Furthermore, pending actual receipt of the money, appellant by the terms of the "Memorandum of Purchase" retained, as security, both the notes and the guaranties. It still has all that it ever had.

Under the circumstances disclosed by the record, the assignment in question must be held to be wholly null and void as against creditors under the provisions of section 67e of the Bankruptcy Act.

Was the purchase by the bankrupt of the Cœur d'Alene notes, with their guaranties, under the facts disclosed by the evidence, within its charter powers?

The bankrupt is a corporation organized under the general corporation laws of the state of Oregon. It has only such powers as are given by the laws of that state. Thompson on Corporations (3d Ed.) vol. 8, § 6582; Chicago, etc., Ry. Co. v. Union Pac. Ry. Co. (C. C.) 47 F. 15; Canada Southern Ry. Co. v. Gebhard, 109 U. S. 527, 3 S. Ct. 363, 27 L. Ed. 1020; Oregon Railway & Navigation Co. v. Oregonian Railway Co., 130 U. S. 1, 9 S. Ct. 409, 32 L. Ed. 837. This is true, even though powers in excess of those authorized by the laws of Oregon be expressed in the bankrupt's articles of incorporation. Oregon Railway & Navigation Co. v. Oregonian Railway Co., supra; State of Oregon v. Portland General Electric Co., 52 Or. 502, 95 P. 722, 98 P. 160; Wemme v. First Church of Christ, 110 Or. 179, 219 P. 618, 223 P. 250; Haberer & Co. v. Smerling, 307 Ill. 191, 138 N. E. 675.

Section 25-205 of the Oregon Code provides that the articles of incorporation of a corporation shall specify, among other things, "the enterprise, business, pursuit, or occupation in which the corporation proposes to engage."

Section 25-208 thereof provides that, upon filing the articles of incorporation "as herein provided," persons subscribing the same shall be deemed a body corporate "authorized to carry into effect the objects specified in the articles," with power, among others, to sue and be sued, to contract and be contracted with, and (paragraph 4) "to purchase, possess, and dispose of such real and personal property as may be necessary and

convenient to carry into effect the objects of the incorporation." Except in those instances where the buying and selling of property is specified as an object of the incorporation as provided in said section 25-205, no power is given a corporation by the laws of Oregon to buy and sell property save the limited power given in paragraph 4 of said section 25-208 to purchase, possess, and dispose of such as may be necessary to carry into effect the objects of the incorporation.

The articles of incorporation of the bankrupt state the purpose for which it is organized to be as follows: "The enterprise, business or pursuit for which this corporation is formed is for the purpose of engaging in the general lumber, timber, milling and allied interests, together with the building of such railroads, logging roads and other things necessary in the full and complete operation thereof. * * *"

Said articles of incorporation further provide that said corporation shall have power "to purchase, acquire, hold, dispose of the stock, bonds and other evidences of indebtedness of any corporation, domestic or foreign, and to issue in exchange therefor its stocks, bonds, or other obligations, and while owner of such stocks, bonds, or other obligations, to possess and exercise in respect thereto, all the rights, powers and privileges of individual owners or holders thereof, and to exercise any and all voting powers thereon. * * *"

The argument advanced by appellant that the power to purchase and sell stocks and bonds expressed in the bankrupt's articles of incorporation as a power may properly be considered as an object of the incorporation cannot be accepted without ignoring the plain language of the articles when read in the light of the sections of the Oregon Code above discussed. The right to buy and sell securities of other corporations given in bankrupt's articles of incorporation must be considered, not as an object of its incorporation, but as a power limited by paragraph 4 of section 25-208 of the Oregon Code to the purchase and sale of such securities as may be necessary and convenient to carry into effect the objects of the incorporation.

It appears from the evidence that the purchase by the bankrupt of the Cœur d'Alene notes was neither convenient nor necessary to carry into effect any of the objects of its incorporation as set forth above. The real purpose and effect of its acquisition of the notes and guaranties was to protect the personal interests of Fred Herrick, the president of the corporation, and not to promote the objects of the corporation. The purchase for said purpose of promissory notes in which the bankrupt had no proper interest and which were in no way calculated to further the objects of the incorporation was more than an abuse or misuse of a corporate power. It was an act entirely beyond the charter powers of the bankrupt. The Oregon Railway & Navigation Co. v. Oregonian Railway Co., supra; Calumet & Chicago Dock Co. v. Conkling, 273 Ill. 318, 112 N. E. 982, L. R. A. 1917B, 814; Twohy Brothers Co. v. Ochoco Irrigation District, 108 Or. 1, 210 P. 873, 216 P. 189; Central Transportation Co. v. Pullman's Palace-Car Co., 139 U. S. 24, 11 S. Ct. 478, 35 L. Ed. 55; Best Brewing Co. v. Klassen, 185 Ill. 37, 57 N. E. 20, 50 L. R. A. 765, 76 Am. St. Rep. 26; Union Pacific Ry. Co. v. Chicago, etc., Ry. Co., 163 U. S. 564, 16 S. Ct. 1173, 41 L. Ed. 265.

The appellant was charged by law with notice of the limited powers of the bankrupt under its charter and the general corporation laws of the state of Oregon, and cannot plead ignorance of such limitations in avoidance of the defense of ultra vires. Pearce v. Madison, etc., R. R. Co., 21 How. 442, 16 L. Ed. 184; Davis v. Old Colony Railroad Co., 131 Mass. 258, 41 Am. Rep. 221; National Home Building & Loan Association v. Home Savings Bank, 181 Ill. 35, 54 N. E. 619, 64 L. R. A. 399, 72 Am. St. Rep. 245; Best Brewing Co. v. Klassen, supra; Steele v. Fraternal Tribunes, 215 Ill. 190, 74 N. E. 121, 106 Am. St. Rep. 160; Citizens' & Marine Bank v. Mason, 2 F.(2d) 352 (C. C. A. 4). Appellant actually knew that the bankrupt was selling out, was no longer seeking to carry out the objects of its incorporation, and was offering to purchase the notes and guaranties from appellant for the personal interest and protection of Fred Herrick.

The contention has been advanced that the purpose and effect of the purchase of the notes was to benefit the bankrupt by eliminating the possibility of interference by the appellant with the pending advantageous sale to the Pine Company of the bankrupt's assets as part of its plan to sell out and quit business. Such a benefit is too remote from the objects of its incorporation to authorize the bankrupt to enter into a transaction that was otherwise clearly beyond its corporate powers. Calumet & Chicago Dock Co. v. Conkling, supra; National Home Building & Loan Association v. Bank, supra.

The strict doctrine of ultra vires is that an ultra vires contract is wholly void, cannot be ratified, and no performance on either side can give it any effect. Thompson on Corporations (3d Ed.) vol. 4, §§ 2828, 2847; McCormick v. Market National Bank, 165 U. S. 538, 17 S. Ct. 433, 41 L. Ed. 817; Union Pacific Ry. Co. v. Chicago, etc., Ry. Co., supra; Central Transportation Co. v. Pullman's Palace Car Co., supra.

A modification of this strict rule is generally recognized which, in effect, is that a corporation that has received the benefits of an ultra vires contract will not be permitted to retain the benefits and at the same time rely upon the defense of ultra vires to avoid performance of its obligation under the contract. Bowen v. Needles National Bank, 94 F. 925 (C. C. A. 9); Thompson on Corporations (3d Ed.) vol. 4, § 2847; Corpus Juris, vol. 14A, 319. But, where the ultra vires contract has not been executed by either party, the law is that neither can enforce it and its ultra vires nature may be relied upon as a defense against its attempted enforcement. Nassau Bank v. Jones, 95 N. Y. 115, 47 Am. Rep. 14; Fletcher, Encyclopedia of Corporations, vol. 3, § 1530, p. 2594; Corpus Juris, vol. 14A, 317; Thompson on Corporations (3d Ed.) vol. 4, § 2846.

Under the evidence in this case, the agreement as contained in the "Memorandum of Purchase" remains, in effect, unexecuted. Neither party has received the actual fruits and benefits of the transaction. Appellant has all that it had before the transaction, having retained both the notes and the guaranties as security for the actual payment of the purchase price by the bankrupt. Since the ultra vires agreement remains unexecuted, the defense of ultra vires may rightfully be urged against appellant's claim to the sum in controversy. Dalles Lumber & Mfg. Co. v. Wasco Woolen Mfg. Co., 3 Or. 527; Twohy Brothers v. Ochoco Irrigation District, supra; California National Bank v. Kennedy, 167 U. S. 362, 17 S. Ct. 831, 42 L. Ed. 198; Fletcher, Encyclopedia of Corporations, vol. 3, § 1530, p. 2594; Thompson on Corporations (3d Ed.) vol. 4, § 2847; Bowen v. Needles National Bank, supra.

The bankrupt was insolvent at the time the ultra vires agreement was made. The effect of the agreement, if carried out, would be to deplete the assets of the bankrupt to the detriment of its creditors. The transaction was in fraud of the bankrupt's then existing creditors. The right of the trustee in bankruptcy to rely upon the ultra vires char-acter of the contract in resisting appellant's claim cannot be doubted. Washington Mill Co. v. Sprague Lumber Co., 19 Wash. 165, 52 P. 1067; Brent v. Simpson (C. C. A.) 238 F. 285; Pittsburg Carbon Co. v. McMillin, 119 N. Y. 46, 23 N. E. 530, 7 L. R. A. 46; Corpus Juris, vol. 14A, 336, 337; Thompson on Corporations, vol. 4, § 2910.

For the reasons expressed in this opinion, the decree of the lower court must be affirmed, and it becomes unnecessary to consider other questions discussed in briefs of counsel.

Affirmed.