**In the Matter of TRI–STATE PAVING, INC., Debtor.**

**Robert G. DWYER, Trustee, Plaintiff,**

**v.**

**Darryl R. JONES and William J. Trainor, II, Defendants.**

**Bankruptcy No. 82–00124.
Adv. No. 82–0203.**

United States Bankruptcy Court, W.D. Pennsylvania.

Aug. 20, 1982.

.. 

porate-debtor and withdrew the sum of $20,261.00 constituting all of the funds in the latter's bank account to finance a trip to Las Vegas to endeavor to win enough money gambling to pay the corporate-debtor's creditors and solve the financial problems of all three debtors in the fall of 1981. They did this with knowledge of the fact that a lucrative paving contract previously awarded the corporate-debtor in the fall of each year would not be forthcoming in the fall of 1981 and that there were no other funds or money generating transactions in sight which would provide for payment of said debts which had accumulated in a considerable amount. The trustee seeks in this action to recover the withdrawn funds from the individual debtors on behalf of the corporate debtor's estate, and to deny them their discharges, or determine their obligations to make repayment of the involved sums non-dischargeable. Defense is made on the ground that the defendants had not drawn salaries for a considerable period of time and that they were justified in making the withdrawals complained of to apply on the same.

The funds were withdrawn and expended from October 8, 1981 to November 10, 1981 and the voluntary bankruptcy petitions of all three debtors were filed March 10, 1982, within 12 months thereof.

Sections 548(a) and 544(b) of the Bankruptcy Reform Act provide in pertinent part the following:

"**548. Fraudulent transfers and obligations**

"(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred on or within one year before the date of the filing of the petition, if the debtor—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred or such obligation was incurred, indebted; or

Robert G. Dwyer and Knox, Graham, McLaughlin, Gornall & Sennett, Inc., Erie, Pa., pro se for trustee-plaintiff.

Richard A. Vendetti and Jiuliante, Vendetti & Bender, Erie, Pa., for defendants-debtors.

MEMORANDUM ON COMPLAINTS OF TRUSTEE TO SET ASIDE FRAUDULENT TRANSFERS AND TO DETERMINE OBLIGATIONS NON–DISCHARGEABLE

WILLIAM B. WASHABAUGH, Jr., Bankruptcy Judge.

The individual debtors were the sole officers, stockholders and directors of the cor-

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer of obligation;

(ii) was engaged in business, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) was intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured."

**"§ 544(b) Trustee . . . . . as successor to certain creditors**

"(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under Section 502 of this title . . . ."

Section 7 of the Pa. Fraudulent Conveyance Act (1921 P.L. 1045 § 7, 39 P.S. 357) is as follows:

**"§ 357.   Conveyance made with intent to defraud**

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

In *Burroughs v. Fields,* 546 F.2d 215 (7th Cir.1976) the corporate president paid himself $4,000 as compensation for duties and an involuntary bankruptcy petition was filed against the corporation four months later. Said the Court in quoting from *Hinz v. VanDuzen,* 95 Wis. 503, 508, 70 N.W. 657, 659 (1897):

". . . when a corporation ceases to be a going institution, or its business is in such shape that its directors know, or ought to know, that suspension is impending . . . its assets in the hands of such directors become, by equitable conversion, a trust fund for the benefit of its general creditors, so that, if such directors prefer themselves over such general creditors, such action constitutes fraud in law, and equity will compel them to make restitution of all property thereby diverted to their personal benefit to the prejudice of such creditors."

Transactions between a debtor-corporation and its controlling officers must be scrutinized. *Hines Western Pine Co. v. First National Bank of Chicago,* 61 F.2d 503 (7th Cir.1932). Corporate directors enjoy privileged access to the company's financial accounts and inside information, a situation ripe for abuse. Corporation-director transfers are analogous to intrafamilial transfers: the relationship of the parties encourages collusion and concealment. Such transfers within a year of bankruptcy have generally been considered threshold evidence of intent to hinder, delay or defraud.

The Court must reject the defendants' argument that they were entitled to the transfers as payments of salary. The Corporation owed money to the defendants, as it owed money to many other creditors. But Trainor and Jones controlled the checkbook. Paying themselves in full by taking unfair advantage of their special positions and knowledge to save themselves from being prejudiced and simultaneously leaving their other creditors with nothing constituted an actual intent to defraud as held in *Robar Development v. Minutello* 268 Pa.Super.Ct. 406, 408 A.2d 851 (1979), where the Court said that officers of an insolvent corporation have the burden of proving that obligations owed to them should be settled prior to obligations owing to other creditors. Moreover, the withdrawn sums were not taken as salaries at any designated rate or for any indicated period of time, nor were any withholding employment taxes paid thereon. They were made for the sole and only purpose of financing a money-spending spree and gambling adventure of the officers, $1,561 of which was paid to a travel agent for their transportation to and from Las Vegas and $18,700 to themselves

personally for unsuccessful gambling attempts and other expenses, which they must not be permitted to do at the risk of the creditors in this proceeding.

It follows that judgment should be entered in favor of the plaintiff against the defendants in the sum of the withdrawn funds of $20,261.00 and that their obligation to pay said judgment to the trustee of the corporate-debtor should be held non-dischargeable under the provisions of Section 523(a)(2)(A) of the Bankruptcy Code.

An appropriate Order will be entered.