Argued March 14, affirmed September 9, petition for rehearing
denied October 15, 1974

SMITH, *Respondent and Cross-Appellant, v.*
J. C. PENNEY COMPANY, INC. ET AL,
*Cross-Respondents,* McCABE ET AL, *Respondents
and Cross-Appellants,* THE BUNKER-RAMO
CORPORATION, *Appellant.*
525 P2d 1299

644

*Ridgway K. Foley, Jr.,* Portland, argued the cause for appellant The Bunker-Ramo Corporation. With him on the briefs were Souther, Spaulding, Kinsey, Williamson & Schwabe, Roland K. Banks and Henry C. Willener, Portland.

*John C. Uhlenhopp,* Coos Bay, argued the cause for respondents and cross-appellants Eugene L. McCabe and Delbert Slagh, dba The Central Enco Service Station, Coos Bay, Oregon. On the briefs were McKeown, Newhouse, Foss & Whitty and John Foss, Coos Bay.

*Raymond J. Conboy,* Portland, argued the cause for respondent and cross-appellant Smith. With him on the brief were Pozzi, Wilson & Atchison, Frank Pozzi and Richard P. Noble, Portland.

*Edward H. Warren,* Portland, argued the cause for cross-respondents. With him on the brief were Hershiser, Mitchell & Warren, Portland.

Before O'Connell, Chief Justice, and McAllister, Denecke, Holman, Howell and Bryson, Justices.

DENECKE, J.

This is a products liability case. The plaintiff was badly burned when a gasoline fire broke out in a service station and ignited an allegedly highly inflammable "fake fur" coat worn by plaintiff. A gasoline line on an automotive vehicle was being blown out with the air pressure hose used to inflate tires. So much force was applied to the gasoline line that it blew a spray of gasoline out of the vehicle's opened tank and through an open door into the waiting room where there was a floor heater. Plaintiff was in the waiting room when the floor heater ignited the gasoline on the floor which in turn ignited her coat and she became a human torch.

The defendants McCabe and Slagh, dba The Central Enco Service Station, operated the service station. The defendant J. C. Penney Company sold the coat to plaintiff. The defendant Bunker-Ramo allegedly supplied the fabric used by Roseda in manufacturing the coat. The jury returned a verdict for $600,000 against the Enco Service Station and Bunker-Ramo, who appeal.

I

■ Bunker-Ramo's first contention is that there was insufficient evidence to enable the jury to find that Bunker-Ramo supplied the fabric which went into this particular coat.

Plaintiff purchased the coat from Penney's in November 1970. Penney's purchased the coat from

Roseda in July or August 1970. According to Penney's manager, on all of these coats purchased by Penney's in July and August there was a red tag stating, "A Borg fabric made especially for Roseda Corporation." Borg is the trade name for fabrics manufactured by Bunker-Ramo. Plaintiff and her mother also remembered a similar tag being on the coat plaintiff purchased.

Plaintiff saved another tag that was on the coat. A notation on the tag stated, "Style 3071 C 1239." The testimony was that "C 1239" was cutting order C 1239 of Roseda.

Mr. Rothman is an officer of Roseda. A few weeks before trial his deposition was taken. He testified on deposition that because of the notations on the tag plaintiff saved he was certain the plaintiff's coat was made from fabric supplied by Bunker-Ramo. He testified that for the entire year of 1970 this particular style number was manufactured from Borg fabrics. He stated that he was certain of his testimony because Roseda went through all of its cutting tickets to determine whose fabric was used. He went on to state that although in 1970 Roseda bought a similar fabric from Malden Mills, he could be certain that the fabric in plaintiff's coat was from Bunker-Ramo because of the information from the cutting ticket.

At the trial counsel read the witness this testimony from his deposition and questioned him about an inventory record Roseda's counsel had furnished plaintiff's counsel at the beginning of the trial. Rothman said this record was missing when he gave his deposition but had since been found. The witness testified that from this record he learned that on June 2, 1970, the inventory record of all fabrics supplied by

Malden Mills had been transferred to the inventory control card of Bunker-Ramo. This was done because for Roseda's purposes the fabrics from the two companies were identical and no purpose was served by having two inventory records. From June second on Roseda termed all fabrics used, "Borg" fabrics; however, this included fabrics supplied by Malden Mills. The witness testified that because of this state of Roseda's record, after June 2, 1970, no one could determine whether a coat was made from fabrics supplied by Malden Mills or Bunker-Ramo. He testified, however, that any coat manufactured by Roseda prior to June 2, 1970, which was made pursuant to a cutting order stating that it was to be made from Borg fabrics would have been made from fabrics supplied by Bunker-Ramo.

The cutting records were introduced. Among the records was one for "Lot No. 1239," the number stated on the tag preserved by plaintiff. The style number, stated on that lot number is "3071," the same as on the tag. In the space printed "Mill No." is inked "Borg Fabrics # 1530." The fabric content and colors stated on the record are the same as in plaintiff's coat. In the space on which is printed, "Tags," is inked in "Borg Hang Tags."

At the upper left-hand corner of this cutting order "5/13/70" is inked in. On the cutting order immediately prior to this one, which had the number "Lot No. 1217," "4/29/70" is inked in at the upper left-hand corner. On the cutting order immediately after this one, which has the number "Lot No. 1261," "5/28/70" is inked in at the upper left-hand corner. In a space on the lower left-hand corner of the cutting order is printed, "Date to Cutting Room," "6 Cht" appears to

be written in there. On other orders in the same space, notations such as "4 Cht," "6 Cht," or "7 Cht" are written in. No witness was asked to explain these figures and letters.

We are of the opinion that this is evidence from which the jury could find that Bunker-Ramo supplied the fabric used by Roseda in manufacturing plaintiff's coat. The jury could reason that Roseda manufactured this coat prior to June 2, 1970, during a period Rothman testified Borg fabrics were used exclusively. Or the jury could find that even if it were manufactured subsequent to June 2, 1970, the notations on the cutting order and the tags proved Roseda used Borg fabrics. They could disbelieve Rothman's explanation that such notations did not prove Borg fabrics were used.

██ Bunker-Ramo argues that the cutting orders were hearsay and the evidence thereon incompetent because the orders did not comply with the criteria for admissibility provided in ORS 41.690, the admissibility of business records statute. The cutting orders were admitted without objection; therefore, it is immaterial whether they met the criteria for admissibility provided by the statute. Hearsay evidence admitted without objection is substantial evidence sufficient to support a verdict. *Kraxberger v. Rogers,* 231 Or 440, 451, 373 P2d 647 (1962); *In re Estate of Elise Rosenberg,* 196 Or 219, 246 P2d 858, 248 P2d 340 (1952); *Shepard v. Purvine,* 196 Or 348, 248 P2d 352 (1952); *Egli v. Hutton,* 135 Or 175, 294 P 347 (1931).

██ Bunker-Ramo also contends plaintiff's evidence was not sufficient because to reach the conclusion that Bunker-Ramo's fabric was used the jury would have

to follow a "chain of inferences." Bunker-Ramo stated: "It has long been the law in Oregon that an inference upon an inference is pure speculation." Any question whether this was Oregon law was removed by our decision in *Eitel v. Times, Inc.,* 221 Or 585, 598-601, 352 P2d 485, 5 ALR3d 86 (1960).

> "The steps in reasoning by which any proposition is sought to be proved can almost always be stated separately in such a way as to reveal the process of moving from one inference to another in the course of proof. Where the inferences are strong enough ordinarily we do not express them in explaining how we reasoned to our conclusion. The admissibility of evidence should not rest upon a method of expressing the process of proof. * * *."
> 221 Or at 601.

We adopted this statement from *Vaccarezza v. Sanguinetti,* quoted in *Eitel* (71 Cal App2d 687, 698, 163 P2d 470, 477 (1945)):

> "The true rule is and should be that an inference cannot be based on an inference that is too remote or conjectural. In a civil case, if the first inference is a reasonably probable one it may be used as a basis for a succeeding inference. * * *."
> 221 Or at 601.

According to this criteria, the evidence and inferences that the fabric in plaintiff's coat was furnished by Bunker-Ramo is not too speculative.

■ Defendant also contends the jury could not reasonably find that the fabric was supplied by Bunker-Ramo because the only expert called as a witness testified to the contrary. Mr. Swihart, an employee of Bunker-Ramo, testified he made an analysis of a piece of plaintiff's coat and a piece of Malden Mills fabric and compared these findings with those made from analyzing Borg fabrics. The witness stated that on

the basis of this testing the fabric in plaintiff's coat definitely was supplied by Malden Mills and not Bunker-Ramo.

The jury did not have to accept the testimony of Mr. Swihart although his testimony was not directly contradicted. He had an interest in the litigation as an employee of Bunker-Ramo. We held this is an important factor to consider in determining whether uncontradicted testimony must be accepted as true. *Rickard v. Ellis,* 230 Or 46, 52, 368 P2d 396 (1962). His qualification as an expert was not overwhelming. On cross-examination it developed that some of the factors upon which he based his opinion were not as reliable as they appeared on direct examination. For these various reasons the jury did not have to accept his testimony.

## II

■ Bunker-Ramo's next assignment of error is that the verdict is internally inconsistent and, therefore, must be set aside.

Two forms of verdict were submitted to the jury. One read that the jury found for the defendants and against the plaintiff. The other stated the jury found in favor of plaintiff and then listed three sets of defendants: (1) Penney's and Roseda; (2) Bunker-Ramo; and (3) The Enco Service Station. The jury was instructed that if it found for plaintiff it was to use this latter form and strike out any of the groups it found were not liable. This form of verdict was agreed upon by all parties and no exception was taken to the explanatory instruction. The jury brought back this form and crossed out group one; that is, Penney's and Roseda. No objection was made to the verdict at the time it was returned.

In Bunker-Ramo's motion for a judgment notwithstanding the verdict or for a new trial, it stated as one ground for its motion that the jury's verdict for Penney's and Roseda "is a determination that the coat was not defective or unreasonably dangerous."

Assuming but not deciding that the verdict was internally inconsistent, Bunker-Ramo cannot now raise this issue because it failed to make a timely objection to the verdict.

The defect in the verdict to which Bunker-Ramo objects was as apparent when the verdict was returned as it was later. If Bunker-Ramo had voiced its objection to the trial court when the jury returned with a verdict, the trial court would have had an opportunity to decide whether Bunker-Ramo's objection was valid. If it decided the verdict was internally inconsistent the trial court could have further instructed the jury and sent it back for additional deliberation. For this reason we hold Bunker-Ramo has not preserved this issue for consideration on appeal.

The substantive contention raised in this assignment by Bunker-Ramo is similar to that raised in cases in which a master and servant are joined as defendants and the jury finds for the servant and against the master. In those cases we have held that if the only negligence charged against the master was the negligence of the servant; a verdict in favor of the servant and against the master cannot be affirmed. For examples, see *Kraft v. Montgomery Ward & Co., Inc.,* 220 Or 230, 250, 315 P2d 558, 348 P2d 239, 92 ALR2d 1 (1960), and *Eckleberry v. Kaiser Foundation,* 226 Or 616, 627, 359 P2d 1090, 84 ALR2d 1327 (1961). In both of these cases as well as previous decisions on this point we did not mention whether an

objection had been made at the time the verdict was returned; apparently, none of the parties in these previous cases argued that a timely objection had not been made.

In *Kraft v. Montgomery Ward & Co.,* supra (220 Or at 251-252), we did state:

> "The general rule seems to be that such verdicts against the employer alone cannot usually be sustained.
>
> "* * * * *.
>
> "* * * The general rule would also be ignored where the master made no timely objection. * * *."

We are not certain, however, from the context and the supporting citation what the court meant by such a statement.

There is another class of cases, however, in which we have clearly held that if no objection is raised to a faulty verdict at the time it is returned, a party is foreclosed from subsequently attacking the verdict.

In *Mullins v. Rowe,* 222 Or 519, 353 P2d 861 (1960), the jury returned a verdict for $332 general damages and no special damages. Three hundred thirty-two dollars was the exact amount of the medical bills. The trial court set aside the verdict and granted a new trial. We reversed. We followed *Fischer v. Howard,* 201 Or 426, 271 P2d 1059, 49 ALR2d 1301 (1954), and summarized that holding:

> "(1) The time to object to a defective verdict, if it is defective, is while the jury is still on hand so that the trial court can resubmit the matter with proper instructions.
>
> "(2) An objection not taken when the verdict is returned into court is waived.

"(3) The only correct procedure to follow is to resubmit the matter to the same jury." 222 Or at 524.

In *Fischer v. Howard,* supra (201 Or 426), the verdict on the second cause of action awarded $1 as damages for compensatory damages, $1 for punitive damages, and $35 as special damages. The trial court granted plaintiff's motion for a new trial. We reversed. We observed plaintiff's counsel did not act when the verdict was returned:

"* * * To the contrary, he kept his lips tightly sealed and permitted the trial judge to discharge the jury after he had ordered the filing of the verdict. Some days later, the plaintiff for the first time spoke up. Then he filed a motion for a new trial which charged the jury with misconduct.

"Plainly, a litigant who wishes to present the contentions offered by this appeal must object promptly when he observes the irregularity or forfeit his right to object. Rights to object which have been waived cannot be reclaimed and revived by resort to a motion for a new trial. A litigant who meets with a verdict such as the one which was returned in this case or with verdicts such as those which were returned in *Snyder v. Portland Railway, Light & Power Co.,* supra [107 Or 673, 215 P 887 (1923)], and *Hall v. Cornett,* supra [193 Or 634, 240 P2d 231 (1952)], should not have a choice to employ the procedure offered by § 5-319, supra [OCLA], or, on the other hand, keep still and later move for a new trial." 201 Or at 463-464.

We also were of the opinion that a contemporaneous objection was required by ORS 17.355 (2). 201 Or at 433. This statute provides: "* * * If the verdict is informal or insufficient, it may be corrected by the jury under the advice of the court, or the jury may be again sent out."

In *Null v. Siegrist,* 262 Or 264, 268, 497 P2d 664 (1972), we affirmed the principle that a faulty verdict cannot be later attacked if the defect was known at the time the verdict was returned and no objection was made.

■ Bunker-Ramo contends this line of cases is inapplicable because in such cases there is "a solid legal basis to hold the complaining defendant liable" and the "jury committed some technical error that contaminated the verdict." There is no reason why a verdict that may be defective on the issue of damages should be treated differently than a verdict that may be defective on the issue of liability. The underlying basis for the line of reasoning adopted by this court in these defective verdict cases is the promotion of justice and the efficient administration of justice. In all cases in which the validity of a verdict is doubtful, an objection must be made in order that the trial court can decide whether the verdict is faulty. If it is, the trial court can decide whether to resubmit the case to the jury and have the case decided correctly by the jury which has heard the case.

### III

■ Plaintiff was standing in the Enco Service Station office when the gasoline which had spread over the floor of the office burst into flame. There was evidence that she would have received some burns even if she had not been wearing this coat. The severity of the burns she would have received had she not been wearing the coat is in dispute. The coat extended to plaintiff's mid-thigh. She received severe burns on her feet, ankles and legs which Bunker-Ramo contends were not caused by the coat catching fire.

Bunker-Ramo's contentions on this aspect of the

case are twofold: It contends "that there is no way to segregate the damages as between the various defendants" and, therefore, plaintiff can recover against no one. It further contends that the evidence establishes that Bunker-Ramo was not the cause of all of plaintiff's injuries; and so it argues that since there cannot be a judgment against the various defendants for different amounts, the plaintiff cannot recover against any defendant in this action.

In *Waterway Terminals v. P. S. Lord,* 256 Or 361, 474 P2d 309 (1970), we quoted with approval the following:

" '* * * The question is primarily not one of the fact of causation, but of the feasibility and practical convenience of splitting up the total harm into separate parts which may be attributed to each of two or more causes. Where a logical basis can be found for some rough practical apportionment, which limits a defendant's liability to that part of the harm which he has in fact caused, it may be expected that the division will be made. Where no such basis can be found, and any division must be purely arbitrary, there is no practical course except to hold the defendant for the entire loss, notwithstanding the fact that other causes have contributed to it.' " 256 Or at 372-373, citing Prosser, Torts 248, § 42 (3d ed 1964).

We do not need to decide whether we should change the Oregon rule that judgments in different amounts cannot be awarded against various joint tortfeasors. There was evidence in this case that as a practical matter plaintiff's injuries were indivisible; that is, the jury could not make any reasonable determination that certain injuries were caused by the gasoline fire and other injuries were caused by the coat.

An employee of the Enco Service Station had gasoline sprayed on his trousers and was engulfed in the same fire as plaintiff, yet suffered only minor burns to his legs. The jury could infer from this that plaintiff would not have incurred severe burns to her lower extremities if she had not been wearing the coat. There was evidence that burning material dripped from the coat, although there was no direct evidence that such dripping material landed on plaintiff's legs or feet. There was evidence that the burning coat radiated such heat that the jury could find it burned plaintiff's lower extremities. There also was testimony that the fierce burning of the coat and the emission of gases in the process would have impeded a wearer from rapidly escaping a fire.

Most important is that there is evidence that the greatest injury to plaintiff arises out of the totality of her condition. There is testimony that she is physically and psychologically permanently disabled and unable to lead a normal life. This cannot be attributed to a burn on her foot, her head, or her body but only to her entire condition.

Bunker-Ramo cannot prevail upon this ground.

## IV

On closing argument, counsel for plaintiff invited the jury to compare the feel of the backing on the fabric on a modacrylic fabric admittedly manufactured by Malden Mills to that of the backing on the fabric of a coat of the style purchased by plaintiff (Exh. 75).

There was testimony that a modacrylic fabric is less flammable than the acrylic fabric used in plaintiff's coat. There was also testimony that Malden Mills

put the backing on their acrylic fabric by a roller method, whereas Bunker-Ramo used a knife method. The testimony was that fabrics with the backing rolled on felt and looked differently than those with the backing knifed on. Counsel argued to the jury that the Malden Mills modacrylic fabric felt rolled, while Exh. 75 felt like it was backed by the knife process used by Bunker-Ramo. Bunker-Ramo objected upon the ground: "He has got modacrylic in the one hand and acrylic in the other." The trial court permitted plaintiff's counsel to continue. After argument defendants moved for a mistrial, stating counsel compared modacrylics with an acrylic coat "and there was no evidence at all in this case, as he knows, of the backing material on any of the modacrylic exhibits * * *." The motion was denied.

We construe the objection to the trial court concerning plaintiff's counsel's argument to be that plaintiff's counsel invited the jury to compare the backing on a modacrylic fabric to the backing on an acrylic fabric and there was no testimony about the backing material used on the modacrylic exhibits. Bunker-Ramo urged us in its brief to note the differences between the exhibits in order to appreciate the alleged enormity of plaintiff's transgression. We have made the observation and we can observe no substantial difference in the backing material used in any of the three exhibits we were asked to observe. There is nothing else in the record to indicate that the lack of any evidence of the backing material used for modacrylic fabrics made counsel's argument prejudicial. Defendant now seems to be arguing that it is the difference in *applying* the backing material that made the comparison prejudicial. That argument was not made to the trial court and, therefore, we will not consider it.

For these reasons we hold the trial court did not err in denying the motion for mistrial.

## V

■ Enco Service Station also appealed and contends the trial court erred in failing to give two requested instructions on causation. They requested the trial court to instruct, in essence, that if it found Enco Service Station could not reasonably have foreseen that their negligent conduct would have caused such extensive harm, Enco Service Station's conduct would not be the cause of plaintiff's injuries. They also requested the trial court to instruct to the effect that if the jury found that the other defendants' conduct had such a predominant effect in bringing about the injuries, that Enco Service Station's conduct became insignificant, Enco Service Station's conduct would not be a substantial factor and, therefore, would not be a cause of plaintiff's injuries.

Enco Service Station relies upon *Canada v. Royce,* 199 Or 196, 257 P2d 624 (1953), and the Restatement (Second) Torts, § 435 (2) (1965). We do not find *Canada v. Royce,* supra (199 Or 196), in point. The first part of § 435 of Restatement (Second), which is identical to § 435 of the first Restatement, provides:

> "(1) If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the *extent of the harm* or the manner in which it occurred does not prevent him from being liable." (Emphasis added.)

We followed that section in *Danner v. Arnsberg,* 227 Or 420, 362 P2d 758 (1961).

Enco Service Station should have foreseen plaintiff would be injured by their conduct. That she was

injured more severely than Enco Service Station could have reasonably foreseen because of her wearing the coat does not cut off Enco Service Station's liability.

■ The "insignificant conduct" requested instruction was based upon § 433, Restatement (Second) Torts, 432, which states, in part:

"The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another:

"(a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it * * *."

Comment *d.* to this section states, in part:

"* * * Some other event which is a contributing factor in producing the harm may have such a predominant effect in bringing it about as to make the effect of the actor's negligence insignificant and, therefore, to prevent it from being a substantial factor. * * *." 2 Restatement (Second) at 433.

The principle stated in the Restatement is not applicable to these facts. The jury would have to find that Enco Service Station's conduct was a substantial factor in causing an injury to the plaintiff of some extent.

Affirmed.