Argued May 7, affirmed June 12, 1975

CLUBB, *Respondent, v.* HANSON ET AL,
*Appellants.*

536 P2d 528

*Patrick Ford* of Ford & Cowling, Medford, argued the cause and filed the brief for appellants.

*Thomas C. Howser* of Cottle & Howser, Ashland, argued the cause and filed the brief for respondent.

TONGUE, J.

This is an action for damages for personal in-

juries sustained by plaintiff when, according to his complaint, defendants' hydraulic jack either "slipped" or was "released" by defendants' employee, causing plaintiff's truck to fall on him while he was replacing a spare tire under the rear of the truck. The case was tried before a jury, which returned a verdict in favor of plaintiff in the sum of $18,500. Defendants appeal from the resulting judgment. We affirm.

Defendants' assignments of error are: (1) The trial court erred in denying defendants' motions for nonsuit and directed verdict; (2) The trial court erred in denying defendants' motion to require plaintiff to elect between inconsistent specifications of negligence; and (3) The trial court erred in denying defendants' motion for a new trial for error relating to the submission to the jury of special interrogatories and for irregularity in the proceedings relating to answers by the jury to those special interrogatories.

1. *The evidence was sufficient to support the verdict.*

Because of direct conflicts in the testimony we must bear in mind that in determining whether there was sufficient evidence to support the verdict all conflicts in the evidence must be resolved in favor of the plaintiff and he is also entitled to the benefit of all favorable inferences which may be reasonably drawn from such evidence. *Cronn v. Fisher,* 245 Or 407, 416, 422 P2d 276 (1966).

Plaintiff drove his camper pickup truck to defendants' service station near Ashland to buy gasoline and to have a tire changed. He testified that he asked the attendant, Mr. Thompkins, if they had a jack strong enough to lift the truck and was told that they did.[1]

---

[1] Plaintiff apparently did not tell the attendant that he had approximately 500 pounds of rocks in the truck, but testified that the attendant told him that he had lifted a diesel lumber truck with the jack. Defendants made no contention that the jack was not strong enough to lift the truck, including the rocks.

According to plaintiff, the attendant then jacked up the rear of the truck with a hydraulic bumper jack (not a hydraulic lift) and tried to get the spare tire out, but did not understand how to do so. After asking plaintiff if he knew how, the attendant got "out from under" the truck and "handed me the screwdriver," after which plaintiff got under the truck and took the spare wheel out while the attendant was taking a rear wheel off.[2]

■ Plaintiff testified that the attendant then "rolled it around to me" and "took the spare and he put it on." Plaintiff placed the rear wheel "in the mantle" under the back of the truck, but had not "tightened it up completely" when he "felt the pickup coming down." He was pinned under the truck until the attendant, after first attempting to lift the rear of the truck with the help of some other men, then lifted it without difficulty using the jack, which was still under the rear bumper of the truck and which did not "have to be reset," according to the testimony of Mr. Thompkins.[3]

■ One of the men who attempted to help the attendant lift the truck testified that he had been working nearby and that just before the truck fell he saw the attendant, Mr. Thompkins, go to the jack, where he stood "with his hand on the handle" of the jack "when it fell."[4]

The Ashland Chief of Police and a police ser-

[2] Plaintiff's testimony is contradicted by that of Mr. Thompkins, which the jury was entitled to disbelieve.

[3] From this testimony the jury could properly find that bending of the bumper did not cause the truck to fall, as contended by defendants.

[4] Defendants suggest that plaintiff may have touched the jack so as to cause the truck to fall. Plaintiff testified that he did not recall touching the jack so as to cause it to release, and that he was "approximately three feet away from the jack at all times," from which the jury could find that he did not cause the truck to fall on himself.

geant also came to the scene of the accident. They both testified that when they arrived the jack was partly raised holding the truck. They interviewed Mr. Thompkins and he "indicated the jack just slipped" or "failed" and that "it had slipped" or "failed" on "several previous occasions." Plaintiff's wife also testified that after the accident Mr. Thompkins told her substantially the same thing.[5]

■■ We hold that this evidence was sufficient to support the verdict because the jury could reasonably infer from this testimony that either defendants' attendant, whose hand was seen by a witness to be on the "handle" of the jack when it fell, caused it to be "released" or to "fall" or that the jack "slipped" or "failed," as it had also done on previous occasions, and that in either event defendants were negligent and that such negligence was the proximate cause of the accident.

Defendants say that there was no direct evidence that defendants' attendant "released" the jack or that it malfunctioned. It is well established, however, that negligence may be established not only by direct evidence, but also by circumstantial evidence. See *Schweiger et ux v. Solbeck et ux*, 191 Or 454, 466, 230 P2d 195 (1951), and *Ehler et ux v. Portland Gas & Coke Co.*, 223 Or 28, 38, 352 P2d 1102, 353 P2d 864 (1960). We hold that there was sufficient circumstantial evidence to support such a finding by the jury in this case. Cf. *Eitel v. Times, Inc.*, 221 Or 585, 596-601, 352 P2d 485 (1960), and *Cowgill, Adm'r v. Boock, Adm'r*, 189 Or 282, 291, 218 P2d 445 (1950).

Defendants also say that this is not a proper case for application of the rule of res ipsa loquitur because of plaintiff's contributory negligence, among

---

[5] Mr. Thompkins denied making any such statements.

other reasons.[9] No res ipsa instruction was given to the jury in this case, however, and the evidence, in our judgment, was sufficient to support a finding of negligence without resort to that rule.

2. *The trial court did not err in denying defendants' motion to require plaintiff to elect between inconsistent specifications of negligence.*

Defendants contend that alternative pleading is improper, at least as a general rule, citing *Kornbrodt v. Equitable Trust Co.,* 137 Or 386, 2 P2d 236, 3 P2d 127 (1931), and *Oregon Farm Bureau v. Thompson,* 235 Or 162, 378 P2d 563, 384 P2d 182 (1963), and that this case does not present the "rare circumstances" in which alternative pleading is permitted, as in *Turney v. Southern Pac. Co.,* 44 Or 280, 75 P 144, 76 P 1080 (1904).

The established rule on alternative pleading is stated in *Jones v. Howe-Thompson, Inc.,* 143 Or 337, 342-43, 22 P2d 502 (1933), as follows:

"Our rule of pleading * * * requires the pleader in the drafting of his pleading to make 'a plain and concise statement of the facts'. It says nothing about alternative language. Language which is alternative in form may not be sufficiently plain if the pleader plainly knows the truth, or should know it. But it occasionally must occur that after an accident has happened which has inflicted an injury upon one who now desires to sue, that he knows that the prospective defendant committed one or the other of two acts, and was negligent in either event, but is unable to determine with sufficient certainty which one so as to justify him in abandoning the one as a premise for his action and swearing to the other. Under such circumstances, if disjunctive language will not unfairly in-

---

[9] See *Short v. D.R.B. Logging Co.,* 192 Or 383, 393-402, 232 P2d 70, 235 P2d 340 (1951), and 2 Harper and James, The Law of Torts 1093, § 19.8 (1956).

convenience the defendant, the plaintiff may employ alternatives in his complaint. * * * And as code pleading is more and more ridding itself of the shackles of common law pleading alternative language, where the pleader does not know the truth, is winning to itself new support. * * *"

To the same effect, see *In re Reuben G. Lenske,* 269 Or 146, 523 P2d 1262 (1974). The same rule is recognized in *Oregon Farm Bureau v. Thompson, supra,* at 184, cited by defendants.

■ In this case, as in *Jones,* it seems fair to assume that plaintiff did not know whether his injury was caused by the "release" of the jack by defendants' attendant or because it "slipped" or "failed."[7] In addition, defendants have made no showing that they were "unfairly inconvenienced" by plaintiff's alternative pleading. Indeed, the fact that defendants made no such motion prior to answer or prior to trial, but waited until after the testimony was completed and both parties had rested, would indicate to the contrary.

3. *Any error or inconsistency in the "special findings of fact" by the jury is not properly presented for decision on appeal and was waived by defendants' failure to object when that verdict was returned.*

■ Defendants' third assignment of error is not clear.[8] Insofar as that assignment appears to complain of the denial of defendants' motion for new trial,

---

[7] Defendants are critical of plaintiff for not subsequently demanding the right to examine the jack. Even if plaintiff had done so, however, and had found the jack to be defective, he still could not know for certain whether the truck fell on him because the jack was released by defendants' attendant whose hand was seen to be on the handle of the jack "when it fell," or whether the jack was defective and "slipped" or "failed."

[8] Defendants' third assignment of error is as follows:

"The special findings of fact entered by the jury finding the plaintiff to be 40% negligent and then finding that such

even if deemed to be sufficient as a matter of form under Rule 6.18 of the Rules of Procedure of this court (which requires that assignments of error "must be specific and must set out verbatim the pertinent portions of the record"), that assignment is nevertheless insufficient as a matter of substance in that the denial of a motion for a new trial is not ordinarily an appealable order. *Unemployment Comp. Com. v. Bates,* 227 Or 357, 360-61, 362 P2d 321 (1961).

■ Insofar as this assignment of error attempts to appeal from the rulings of the court which were the grounds for defendants' motion for new trial (which is not set forth in the abstract of appellants' brief), the assignment is also insufficient, both in form and in substance.[8]

Again, the assignment is not "specific" and does not "set out verbatim the pertinent portions of the record," as required by Rule 6.18.[10] In addition, it does

---

negligence was not a proximate cause of the accident was contrary to law and the trial court erred in denying defendant's motion for new trial or, in the alternative, setting aside that portion of the judgment which would have been deducted had the contributory negligence been determined a proximate cause."

[8] Defendants' motion for new trial was based upon the following grounds, according to the trial court file:

"(1) There was an irregularity in the proceedings in that the jurors answers to the special findings of fact were inconsistent and erroneous to the extent that plaintiffs were found to be contributorily negligent and which negligence was found to be 40 percent of the contributing cause to the accident but, in interrogatory #4 the answer was in the negative with respect to proximate cause; and

"(2) An error in law occurred at the trial when the court submitted the issue of proximate cause to the jury by way of interrogatories contrary to the verdict form requested by defendants."

[10] See *Elvalsons v. Industrial Covers, Inc.,* 269 Or 441, 525 P2d 105 (1974), and *Pullen v. Calvert,* 270 Or 309, 527 P2d 398 (1974).

not appear that proper or any objections or exceptions were taken at the time of trial, so as to provide proper grounds either for a motion for a new trial under ORS 17.610 or for an appeal to this court upon the denial of such a motion. See *Padel v. Narits,* 247 Or 566, 430 P2d 1002 (1967), and *Transamerica Title Ins. v. Millar,* 258 Or 258, 263, 482 P2d 163 (1971).

■ Similarly, insofar as an "error at law" is alleged in the submission to the jury of the issue of proximate cause "contrary to the verdict form requested by defendants," that proposed form of verdict does not appear in the record, much less any specific objection at the time of trial to the failure of the court to submit that form of verdict to the jury. Indeed, defendants requested the "uniform" instruction on proximate cause, and the trial court gave a general instruction on that subject.

■ Insofar as "irregularity in the proceedings" is alleged in that jury answers to special findings of fact were inconsistent and erroneous, it appears that the trial judge instructed the jury to reconsider the answers first made by it to these interrogatories and that when the jury again returned after making some changes in such answers, no objection was made by the defendants upon the ground that such answers were "inconsistent or erroneous" or for any reason whatever.[20]

In *Smith v. J. C. Penney Co.,* 269 Or 643,

---

[20] The "special findings of fact," as finally returned by the jury, are as follows:

"1. At the time and place in question, and under the conditions as shown by the evidence, were the defendants negligent?

Answer: Yes

"2. If the answer to Question #1 is 'no', you do not need to answer the remaining questions. If your answer to Question #1 is 'yes', then answer this question. Was

525 P2d 1299 (1974), after a review of our previous decisions on this subject, we stated the following rule (at 1489):

"* * * In all cases in which the validity of a verdict is doubtful, an objection must be made in order that the trial court can decide whether the verdict is faulty. If it is, the trial court can decide whether to resubmit the case to the jury and have the case decided correctly by the jury which has heard the case."

We believe that this rule is controlling in this case. Here, as we also noted in *Smith* (at 1486), any defect in the verdict to which defendants now object "was as apparent when the verdict was returned as it was later." It follows, as also held in *Smith* (at 1486), that "assuming but not deciding that the verdict was

such negligence on the part of the defendants a cause of the accident and the plaintiff James Clubb's injuries?

Answer: Yes

"3. At the time and place in question, and under the conditions as shown by the evidence, was the plaintiff, James Clubb, negligent?

Answer: Yes

"4. If your answer to Question #3 is 'no', proceed to Question #6 & #7. If your answer to Question #3 is 'yes', then answer this question: Was such negligence on the part of the plaintiff, James Clubb, a cause of the accident and the plaintiff's injuries?

Answer: N̶o̶ Y̶e̶s̶ No

"5. If you have answered Questions #1, $_2$ and #3, $_4$ 'yes' then answer this question: (Questions #1 and #3 being the negligence questions of both James Clubb and defendants, who must both be found negligent before their negligence can be compared.) Considering all the negligence that caused the accident at 100 percent, what percentage is attributable to:

    (a) Plaintiff, James Clubb:    4̶0̶ %
    (b) Defendants:    6̶0̶ %
            TOTAL:   100 %

"If your answer to Question #5(b) is 51 % or larger, then answer Questions #6 and #7.

internally inconsistent, [defendants] cannot now raise this issue because [they] failed to make a timely objection to the verdict."[2]

"6. What sum of money will fairly and reasonably compensate James Clubb with respect to his personal injuries, disregarding any percentages you may find in Question #5?

Answer: $18,500.00

"7. What sum of money will fairly and reasonably compensate Kathryn Clubb for the loss of James Clubb's consortium, disregarding any percentages you may find in Question #5?

Answer: None"

When the jury first returned its verdict the figures "40%" and "60%" appeared in answer to Question #5. These figures were stricken by the jury when it returned its final verdict and after the trial court had given it further instructions and had inserted the figures "2" and "4" in Question #5. It also appears that in that process the "No" answer to Question #4 was changed to "Yes" and then back to "No."

[2] Defendants also contend on this appeal that upon finding that plaintiff was negligent (in answer to Question #3) the jury could not properly find that such negligence was not "a cause of the accident and the plaintiff's injuries" (as found by its answer to Question #4), but that any such negligence "must of necessity have been an efficient cause of his injuries" and was at least a "substantial factor" in causing such injuries, citing *Stoneburner v. Greyhound Corp et al*, 232 Or 567, 574, 375 P2d 812 (1962).

No such contention, however, was made by defendants upon the return of the jury verdict and prior to its dismissal. Had that contention been called to the attention of the trial judge at the time of trial he might well have either withdrawn both the instruction on proximate cause and the submission to the jury of Question #4 or have instructed the jury to reconsider its answers to the special interrogatories, including Question #4.

Indeed, the jury may well have been confused by that question, which asked whether any negligence by plaintiff was "a cause of the accident and of plaintiff's injuries." Thus, the jury may have thought that although plaintiff's negligence was "a cause" of his injuries in that had he not been under the truck he would not have been injured, any such negligence was not a cause of the accident in that he did not touch the jack and his conduct had nothing to do with the "falling" of the truck.

Finding no error, the judgment of the trial court is affirmed.

---

Any such confusion could well have been clarified by further instructions from the trial court had this contention been made by defendants at the time of trial and before the jury was excused.

Again, however, applying the rule of *Smith v. J. C. Penney Co.*, 269 Or 643, 525 P2d 1299 (1974), we hold that because any such defect in the verdict was "as apparent when the verdict was returned as it is now," defendants "cannot now raise the issue because [they] failed to make a timely objection to the verdict."