## UNITED STATES NATIONAL BANK
## OF OREGON,
*Appellant,*

*v.*

## ZELLNER et ux,
*Respondents.*

## (16-86-06481; CA A49824)

789 P2d 670

Daniel N. Gordon, Eugene, argued the cause and filed the briefs for appellant.

Michael S. Sommers, Portland, argued the cause for respondents. With him on the brief was Frank E. Day, Portland.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

## RIGGS, J.

When Jacob Duke was three years old, he fell into an artificial waterway while playing on the grounds of a fish hatchery. He suffered severe, irreversible brain damage. United States National Bank (plaintiff), acting as Jacob's conservator, filed a negligence action against defendants (landlords). The jury returned a verdict in favor of landlords. Plaintiff appeals from the resulting judgment.

Landlords' tenant operated the fish hatchery on the leased premises. One of the tenant's employees lived in a trailer on the premises so that he could be available quickly if pumps or other equipment broke down. Jacob and his mother lived in the trailer with the employee.[1] For several months before the accident, landlords and the tenant had engaged in protracted negotiations over the terms of a written lease, but at the time of the accident, they had not signed one. During the period of negotiation, landlords had made various repairs to the hatchery. Plaintiff took the position that landlords had agreed orally to repair the hatchery and that their repairs were evidence of both the alleged oral agreement and landlords' continued control of the premises.

Plaintiff's legal theories[2] are somewhat confused, but appear to claim that landlords are liable under the principles of landlord liability expressed in *Restatement (Second) Torts,* § 356 (1965). According to that section, landlords are not liable to third persons on the land for physical harm caused by any dangerous condition that existed when the tenant took possession. However, the same section refers to many excep-

---

[1] Plaintiff also sued landlords' tenant, who settled with plaintiff before trial.

[2] Plaintiff's fourth amended complaint contains seven "counts." They are labeled, respectively:

"Negligence — Attractive Nuisance, Knowledge of Defect"

"Negligence — Attractive Nuisance, Negligent Repair"

"Negligence — Attractive Nuisance, Covenant to Repair"

"Negligence — Attractive Nuisance, Retention of Control"

"Negligence — Invitee, Covenant to Repair"

"Negligence — Invitee, Retention of Control"

"Negligence — Invitee, Negligent Repair"

tions to that rule. Plaintiff's theories may be an attempt to allege facts that fall within those exceptions.[3]

■     Plaintiff first contends that the court erred in admitting testimony in response to questions about whether the landlords had "an obligation" to make repairs to the fish hatchery. Plaintiff argues that the questions were improper, because they called for lay witnesses to offer legal opinions.

Defense counsel had this exchange with the tenant's former manager:

"Q.   Is it your understanding of the arrangement by which you were on the premises, was kind of a tenancy month-to-month?

"A.   As far as I could tell.

"Q.   There was no lease?

"A.   I never saw a lease that was signed by both people.

"Q.   Did Mr. Zellner [a landlord] have any obligation to make repairs, improvements and alterations?

"[Plaintiff's counsel]:   Objection. Calls for a legal conclusion.

"The court:   Well, you may answer, if you know.

"The witness:   In my opinion, no. What Mike [Hughes, tenant's subsequent manager] and I were trying to do, with little or no guidance, was to follow as closely as we could afford to what we considered to be the intent of the unsigned lease, if that makes any sense at all.

"Q.   [By defense counsel] Well, it gives me a view of your understanding, and, of course, what we're really trying to look at is what the parties — we don't have a written lease. We have to look at what the parties regard as what the arrangements were between them. And I'm asking you what it was insofar as you were concerned.

"Did Mr. Zellner have any obligation to make any other repairs or alterations or improvements?

"A.   I don't feel personally he did, no."

Later in the trial, defense counsel pursued the same

---

[3] A few months after the judgment was entered in this case, the Oregon Supreme Court decided *Bellikka v. Green*, 306 Or 630, 762 P2d 997 (1988), which rejected continued adherence to the "traditional rules of landowner liability set forth in the Restatement." 306 Or at 640.

question with Hughes, who had succeeded the original manager:

"Q. Now, did Zellner have any obligation to do any repairs at the place?

"A. I don't think so."

In *Olson v. Coats,* 78 Or App 368, 717 P2d 176 (1986), a witness was asked: "[A]nd did the signs that you had up [at the construction site] comply with whatever the [statutory] requirements were?" We held that the trial court's admission of the witness' answer after a timely objection was error, because the question called for a legal conclusion. 78 Or App at 370-71. The witness there had been asked whether specific facts satisfied a legal standard. Here, by contrast, the witness was asked, in a series of questions, whether the parties had determined who would be obligated to make repairs to the fish hatchery. Counsel's comments made clear that he was seeking *factual* information about the content of the parties' agreement about who would be responsible for repairs. The trial court did not err by allowing the witness to answer.[4]

■        In a related assignment of error, plaintiff argues that the trial court erred when it refused to allow the introduction of evidence that landlords had obtained a policy of liability insurance on the rented premises. Plaintiff's purpose was to show that landlords retained control of the premises or that they had agreed to repair the fish hatchery. Assuming that evidence of the insurance policy was relevant to those issues, the court acted within its discretion in excluding the evidence on the ground that its prejudice substantially outweighed any probative value. OEC 403.

Plaintiff's next assignment of error is far from clear. He contends that the court "erred in granting defendants' motion for a directed verdict on plaintiff's theory of attractive nuisance." At the close of the evidence, landlords moved for a directed verdict. The trial judge, after hearing argument on the motion, said:

"Now, so my judgment is to directed [*sic*] verdict for the Defendant [*sic*]. I would allow counsel to — let me finish."

---

[4] In view of our holding, we need not address plaintiff's contention that its objection to the question posed to one witness sufficed to preserve the claimed error as to a similar question to a later witness.

After an interruption by plaintiff's counsel, the judge, acting pursuant to ORCP 63B,[5] continued:

> "I would allow Plaintiff the opportunity to allow this case to go to the jury."

Plaintiff argues that the judge failed to give adequate jury instructions "relating to plaintiff's theory of attractive nuisance." Consequently, in the view of plaintiff, the "issue is appropriately treated * * * as if the court [had] granted the [directed verdict] motion without submission of the [attractive nuisance theory] issue to the jury."

We do not pretend to understand fully the nature of what plaintiff characterizes as his "theory of attractive nuisance." However, it is plain that at least two of plaintiff's counts were premised on the existence of an agreement between landlords and their tenant that landlords would repair the fish hatchery. One or more of the other counts in the fourth amended complaint apparently would subject landlords to liability *without* an agreement by them to repair. Plaintiff's "theory of attractive nuisance" is intertwined with some or all of those counts.

The court submitted a special verdict form to the jury. The first question was:

> "1. Did defendant have an agreement with [the tenant] to repair the hatchery prior to and up to the time of plaintiff's accident? Yes ___ No ___.
>
> "If your answer to question 1 is 'yes' go directly to question 2. If your answer to question 1 is 'no', then your deliberations are complete, check question 9 wherein you find for the defendants, sign the verdict form, and signal for the bailiff."

Nine of the 12 jurors voted "no" on question one. Judgment was entered in favor of defendants.

The trial court described plaintiff's "theory of attractive nuisance" when it summarized the pleadings for the jury. The court submitted the whole case to the jury, apparently

---

[5] ORCP 63B provides:

"In any case where, in the opinion of the court, a motion for a directed verdict ought to be granted, it may nevertheless, at the request of the adverse party, submit the case to the jury with leave to the moving party to move for judgment in such party's favor if the verdict is otherwise than as would have been directed or if the jury cannot agree on a verdict."

including the parts of the case that were not premised on an agreement to repair. Despite that posture, the verdict form makes an agreement to repair the hatchery the *sine qua non* of landlords' liability on *any* theory.[6] As landlords correctly observe, however, plaintiff did not object to the verdict form at trial.

In *Demars v. Erde*, 55 Or App 863, 640 P2d 635 (1982), the court entered a directed verdict for the plaintiffs on the issue of liability. On appeal, the plaintiffs challenged a jury verdict for the defendants, claiming that the verdict form was "contrary to the weight of the evidence and illegal." 55 Or App at 867. The plaintiffs argued that the verdict form should have permitted the jury to consider only the amount of damages suffered. We held that, because the plaintiffs had failed to object to the verdict form at trial, they were "not entitled to appellate review of the issue." 55 Or App at 868. Had plaintiff here objected to the verdict form, the trial court would have had an opportunity to clarify it and to correct any errors. *See Smith v. J. C. Penney Co.,* 269 Or 643, 655, 525 P2d 1299 (1974). In view of plaintiff's failure to object, the trial court did not err in the way that it submitted the case to the jury, even though the form of the verdict may have had the effect of removing a part of plaintiff's theory from the jury's consideration.[7]

Plaintiff's failure to preserve error as to the verdict form precludes our review of any theory other than one premised on the existence of an agreement by landlords to repair the fish hatchery. *Demars v. Erde, supra,* 55 Or App at 867-68.

Plaintiff's remaining assignments of error assert that the court erred (1) by permitting landlords to introduce evidence of Jacob's mother's negligent supervision both on and

---

[6] Questions two through five asked whether the condition of the hatchery premises created an unreasonable risk to Jacob Duke, whether defendants had timely notice of the condition of the land, whether defendants had a reasonable opportunity to make repairs to make the premises safe, and whether the accident was foreseeable. The verdict form instructs the jurors that, if they answer "yes" to any question, they are to proceed to the next question; if they answer "no" to any question, they are to find for defendants. Because the jury answered "no" to the first question about the agreement, it did not respond to questions two through five.

[7] We also note that, although plaintiff argues that the court failed to instruct on plaintiff's "theory of attractive nuisance," it has not assigned error on appeal to the court's refusal to give specific instructions.

prior to the date of the accident; (2) by refusing to give plaintiff's jury instruction that the jury was not to consider the negligence of Jacob's mother in allowing him to play outside; (3) by failing to give plaintiff's requested jury instruction that custom in an industry cannot justify negligence; and (4) by refusing to allow plaintiff to impeach landlords' investigator with evidence of the fact that he was an insurance adjuster paid by the insurance company defending the action.

On their face, the first three assignments relate to defenses to a negligence claim. The fourth involves direct testimony by landlords' investigator regarding the standard of care of hatcheries, specifically whether other hatcheries in the area had erected fences to keep small children away from the waterways. However, the jury decided the case by finding that landlords had no agreement to repair the hatchery. It never reached the question of negligence. For the reasons given above, plaintiff's failure to object to the verdict form precludes appellate review of these assignments of error.

Affirmed.