Argued December 22, 1908, decided February 9, rehearing denied April 20, 1909.

. YOUNG *v.* COLUMBIA LAND & INV. CO.

[99 Pac. 936; 101 Pac. 212.]

CORPORATIONS — NOTICE — PURCHASE PERSONALLY BY STOCKHOLDERS — EFFECT.

1. A corporation is entitled to the benefits of a transaction wherein the majority stockholders personally purchased, at a discount, outstanding notes of the corporation, where the offer to sell was originally made to the corporation, which was well able to accept it, but was so changed as to make it a personal one at such stockholders' request, and where the acting directors were either parties to the purchase or acquiesced in the transaction.

CORPORATIONS—NOTES—ACTION BY STOCKHOLDERS—PURCHASE PRICE— EVIDENCE—WEIGHT.

2. Weight of the evidence in an action against a corporation on its notes brought by directors of the corporation *held* to show that plaintiffs paid for notes a sum much less than their face value, which sum only they were entitled to recover.

CORPORATIONS—DUTIES OF OFFICERS—ACQUIRING ADVERSE TITLE.

3. Two directors purchased outstanding notes of the corporation, and the other directors consented to the purchase; and the corporation, through the fault of its directors, made no provision to take care of the notes and the

mortgage securing them. *Held*, that there was a personal duty devolving upon the two directors who purchased the notes and mortgage to take them up in the interest of the corporation, and they were therefore precluded from purchasing at a discount for their own benefit.

CORPORATIONS—ACTIONS BETWEEN CORPORATIONS AND ITS OFFICERS—
    LACHES.
4. A corporation cannot be charged with laches in failing to question a purchase by certain of the directors for their own benefit of notes given by the corporation, where the directors interested in the transaction constituted the majority of the board and were alone chargeable with the delay.

From Clatsop: THOMAS A. MCBRIDE, Judge.

Statement by MR. JUSTICE EAKIN.

The defendant company was organized in the year 1891 for the purpose of dealing in real estate, with a capital stock of 1,000 shares, each of the par value of $100, and soon thereafter purchased some land at Tongues Point, Clatsop County, including some water front, for the consideration of $75,000; that on March 17 and 27, 1896, respectively, the defendant corporation became indebted to Hiram Brown in the sum of $7,583.15 and in the sum of $1,050, evidenced by two promissory notes, due one year after date, the payment of which was secured by a mortgage on the property of the company; that prior to June 22, 1901, said Hiram Brown died, and at the time of the acts herein complained of, his son and daughter—Charles S. Brown and Mrs. Anna Wilkinson—were the owners of said notes and mortgage. On June 22, 1901, the plaintiffs herein purchased said notes and mortgage, and in April, 1904, commenced this suit to foreclose the mortgage. At the time of such purchase the stock of defendant corporation was owned by the following persons: A. B. Hammond, 1 share; the Astoria Company, 99 shares (represented by Hammond); C. S. Brown, 50 shares; J. F. Hamilton, 50 shares; Dr. Alfred Kinney, D. K. Warren, Benjamin Young, M. J. Kinney, C. S. Wright, W. C. Smith, and H. F. Prael, each 100 shares—there being but 900 shares issued. Dr. Alfred Kinney, D. K. Warren, Young, Wright, and Page were the directors of the company. It seems that Page

did not own any stock; that prior to this litigation D. K. Warren died, and his executors represent his estate in this suit.

By leave of the court, the Astoria Company and Hammond, owners of 100 shares, answered the complaint, on behalf of themselves and such other stockholders as may be benefited thereby, alleging that Young, Hamilton, M. J. Kinney, plaintiffs, and D. K. Warren and A. Kinney, were directors of defendant company at the time of the transaction complained of, and are still such directors; that plaintiffs are the owners of the majority of the capital stock of defendant company; and that plaintiffs refused to answer and defend the complaint on behalf of the company, and all the other directors and stockholders are acting in concert with plaintiffs. After certain denials, these defendants allege that plaintiffs purchased said mortgage notes for $5,000, and that after such purchase, and prior to the commencement of this suit, there was paid on said notes and mortgage about $4,000; that at the time of the purchase by plaintiffs these defendants offered to advance to the company the money to take up and pay said notes, but that plaintiffs refused to do so, and purchased the same for their individual advantage in violation of their duties as directors and stockholders of defendant corporation, and asked that the amount paid therefor, and the credits thereon, be ascertained, that the defendant be permitted to pay the balance due, and that the suit be dismissed.

Replies were filed and the cause tried by the court and findings made in favor of these defendants, to the effect that the plaintiffs purchased said notes and mortgages for $5,000, and have received payments thereon— July 28, 1902, $1,896.35, and August 3, 1903, $1,750— leaving due $1,800,40, including interest to August 3, 1903, and decreed that these defendants pay to plaintiffs within 60 days one-ninth thereof, and Dr. A. Kinney one-ninth, being their proportion thereof, and that there-

upon the notes and mortgage be canceled and discharged; otherwise, that the mortgage be foreclosed for the amount unpaid, together with $100 attorney fees and costs. From this decree, the plaintiffs appeal.

AFFIRMED.

For appellants there was a brief with oral arguments by *Mr. Edward B. Watson* and *Mr. John F. Hamilton.*

For respondent there was a brief and an oral argument by *Mr. George C. Fulton.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. The first question of importance is as to the right of plaintiffs, under the facts, to purchase the liabilities of defendant corporation at a discount for their own personal advantage. We conclude that their purchase of defendant's mortgage notes was made under such circumstances that the stockholders have a right to the advantage of it as made for the benefit of the company. An offer was made by W. C. Brown to sell to defendant company these mortgage notes at a discount, and the change in the offer, making it a personal one to the plaintiffs, was made at the suggestion of one of the plaintiffs. The company was well able to take advantage of this offer, and the acting directors of defendant company were either parties to the purchase or acquiescing in the transaction, notwithstanding it was their duty to use their best endeavor to advance the interests of the corporation. Where the trust duty of directors of a corporation and personal interest conflicts, the latter must give way. W. G. Gosline, in the interest of Hammond, and W. C. Smith, a stockholder, were active in attempting to procure some settlement of the notes and mortgage and in securing an offer of discount thereon for the benefit of the company. One witness testifies that there was some strife between the Hammond interest and that of the other stockholders, and in giving his reasons for desiring to get hold of the mortgage, stated

that some of the stockholders thought it about time to wind up the company, thus indicating that the purchase was made in opposition to the company's interest.

2. In *Higgins* v. *Lansingh*, 154 Ill. 301, 384 (40 N. E. 362, 387), it appears that Higgins owned such a large interest in the company that he practically controlled it. He also owned the secured debts of the company that were overdue, and purchased at a discount pledged stock of the company. It was held to be the duty of the managers, of which he was one, to make provision for their payment out of the resources of the company, if possible. He knew it was for the interest of the company to do so, but did not inform the other managers of the proposed sale, nor give the company any opportunity to receive the benefit of the transaction. The court said: "We have also held that a director may purchase outstanding obligations of the company and enforce their collection. But the question, so far as we know, has not before been presented whether or not he may purchase such claims at a discount, and enforce them in full. If he acts fairly and for the interest of the corporation, we think he may. He certainly would be doing the corporation no injury in case his management were in the interest of the corporation, and it were given a fair opportunity to itself become the purchaser, and could not or would not embrace such opportunity. We are of the opinion, however, from the evidence in this case, that Higgins could not, under the circumstances attending the transaction, purchase these securities, as he did, at a discount, and hold them against the company for payment in full, but that the company and its stockholders have the right to treat the purchase as made for their benefit." We think the principle here announced applied to the case before us, and that it was the duty of its board to take up these notes to protect the interests of the stockholders, and not in their own right against the interest of the company. This principle in

no way conflicts with the case of *Seymour* v. *S. F. C. Ass'n,* 144 N. Y. 333 (39 N.. E. 365: 26 L. R. A. 859), relied upon by plaintiffs. The transaction in that case related to unmatured obligations of the company that it did not desire to take up, and it was upon that circum-stance that the case rested. It is said in the opinion there are "other cases in which the duties flowing from a liquidation conducted by the trustee, and to which he owes a specific trust duty, forbid a purchase by the trustee for his own benefit at a discount. But in every class of cases the rule is founded upon the unwillingness of the law to uphold contracts which bring into collision the trust duty and the personal interest." And, if plaintiffs obtained these notes at a discount, still the purchase must be treated as for the benefit of the company, and they cannot enforce the mortgage for more than the amount paid for it.

It is also important to ascertain the amount paid for the mortgage for the purpose of determining the amount for which the company is chargeable. There is some conflict in the evidence upon this question. Plaintiffs contend that they paid $11,000 for the notes, while defendant contends that plaintiffs paid but $5,000. The sum paid by plaintiffs in the whole transaction was $27,500 in payment of the individual notes of plaintiffs, amounting to $16,002, and the notes of Wright, Smith, and Prael, each $7,000, and the two notes of the company $11,000, together with 50 shares of stock of defendant company, held by Brown, at the price of $500. Plaintiffs contend that the mortgage notes were taken at their full value and all the discount was on the three notes of Smith, Wright, and Prael upon the theory that the makers of these three notes were insolvent, and that their 300 shares of stock, in defendant company, held by Brown as collateral security for the payment of their notes, were worth only $10 per share, Brown having offered his 50 shares at that value. But Brown was

anxious to close out his interest in the company and was making a sacrifice for that purpose. The evidence shows that plaintiffs put a much higher value on the stock than $10 a share. This appears from their testimony, as well as from the offer of the company to sell to Hammond, as shown by plaintiffs' Exhibit D, namely, $16,000, for the water front, and he to pay the mortgage notes and surrender his 100 shares of stock, and the people to be benefited by proposed improvements to pay defendant company a bonus of $10,000, leaving 100 acres of the land, probably worth $5,000, to defendant company. This would make the water front cost Hammond $30,000 and leave clear to plaintiffs the $16,000 to be paid by Hammond, and the 100 acres at $5,000,. with the $10,000 bonus, making $31,000 to be divided among 800 shares, a valuation of over $36 per share, or, without the bonus, worth $26 a share at the lowest estimate. Other witnesses placed the value of the property much higher.

It was conceded that Brown made no discount to plaintiffs on their individual notes. Therefore the mortgage notes and the Wright, Smith, and Prael notes were purchased for $11,000, while the stock of those three men was at these figures worth $7,800, and was turned over to plaintiffs without other expense or trouble, showing that, if the full value had been paid for the mortgage notes, plaintiffs received the notes and stock of Wright, Smith, and Prael without consideration. These figures, together with the fact that Brown, shortly before this time, had been offering the mortgage notes for $5,000, tends strongly to corroborate the testimony of defendant's witnesses, and fully justifies the conclusion that the purchase price of the mortgage notes was $5,000.

We find no error in the decree of the lower court, and it is affirmed.                    AFFIRMED.

· Decided April 20, 1909.

## ON PETITION FOR REHEARING.

[101 Pac. 212.]

MR. JUSTICE EAKIN delivered the opinion of the court.

Three points are suggested, by the motion, for reversal of the decree: (1) That plaintiffs were not disqualified from purchasing the notes in their individual capacity; (2) that the notes were purchased at their face value, and not at a discount; (3) that defendants have, by their delay, lost their right to question the transaction.

3. As to the first proposition, we have no controversy with counsel as to the law stated in the motion and in the authorities in support thereof. As stated in Cook, Corp., § 660:

"Directors may buy corporate bonds from third parties at a discount and enforce them at par, where there are no special equities against such a purchase, and no present duty in regard to them from him as a director."

Similar language is used in *McIntyre* v. *Ajax Mining Co.,* 28 Utah, 163 (77 Pac. 613), and this principle is recognized in every case cited in the motion, and also in the opinion in this case. But the conclusion reached in the opinion is based on the duty of plaintiffs, as disclosed by the facts, to take care of the notes and mortgage for the benefit of the corporation, and therefore comes within the exception to the rule that a director may purchase at a discount for his own benefit. Two of the plaintiffs were directors of defendant corporation at the time of this transaction, and the other three connived at and consented to the purchase, and were the only persons by whom the corporation could act, and it was their fault that provision was not made by the corporation to take care of the notes, which it was well able to do. Therefore there was a present duty devolving upon plaintiffs to take up said notes and mortgage in the interest of the corporation, and consequently they are

precluded from purchasing at a discount for their own benefit.

As to the second point, it is true that the evidence does not disclose that at the time the transaction was consummated, anything was said as to the value at which any item was taken over. But it appears that all through the negotiations leading up to this transaction, both with agents of Hammond and with plaintiffs, these two notes of the corporation were offered at $5,000; and from all the evidence we are justified in the conclusion that that was the value at which they were taken over.

4. Defendants cannot be charged with laches in this transaction, as plaintiffs constituted the majority of the board, and were alone chargeable with the delay.

Motion is denied.

AFFIRMED: REHEARING DENIED.