Argued and submitted September 30, 1983, affirmed March 7,
respondent, cross-appellant Klinicki's reconsideration denied
and appellant, cross-respondent Air Berlin's reconsideration denied April 27,
petitions for review allowed May 22, 1984 (297 Or 227)
See 298 Or 662, 695 P2d 906 (1985)

KLINICKI,
*Respondent, Cross-Appellant,*

*v.*

LUNDGREN et al,
*Cross-Respondents,*

*and*

AIR BERLIN CHARTER COMPANY,
*Appellant, Cross-Respondent.*

(A7810-16086; CA A20084)

678 P2d 1250

Janet A. Metcalf, Portland, argued the cause for appellant, cross-respondent. With her on the briefs was English & Metcalf, Portland.

Brad Littlefield, Portland, and Lloyd B. Egenes, San Francisco, California, argued the cause for respondent, cross-appellant. With them on the briefs were Goldsmith, Siegel, Engel & Littlefield, Portland, and O'Gara, Friedman, Egenes & Burke, San Francisco, California.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Young, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

In January, 1977, plaintiff Klinicki conceived the idea of engaging in the air transportation business in Berlin, West Germany.[1] He discussed the idea with his friend, defendant Lundgren. At that time, both men were furloughed Pan American pilots stationed in West Germany. They decided to enter the air transportation business, planning to begin operations with an air taxi service and later to expand into other service, such as regularly scheduled flights or charter flights. In April, 1977, they incorporated Berlinair, Inc., as a closely held Oregon corporation. Plaintiff was a vice-president and a director. Lundgren was the corporation's president and a director. Each man owned 33 percent of the company stock. Lelco, Inc., a corporation owned by Lundgren and members of his family, owned 33 percent of the stock. The corporation's attorney owned the remaining one percent of the stock. Berlinair obtained the necessary governmental licenses, purchased an aircraft and in November, 1977, began passenger service.

As president, Lundgren was responsible, in part, for developing and promoting Berlinair's transportation business. Plaintiff was in charge of operations and maintenance. In November, 1977, plaintiff and Lundgren, as representatives of Berlinair, met with representatives of the Berliner Flug Ring (BFR), a consortium of Berlin travel agents that contracts for charter flights to take sallow German tourists to sunnier climes. The BFR contract was considered a lucrative business opportunity by those familiar with the air transportation business, and plaintiff and defendant had contemplated pursuing the contract when they formed Berlinair. After the initial meeting, all subsequent contacts with BFR were made by Lundgren or other Berlinair employes acting under his directions.

During the early stages of negotiations, Lundgren believed that Berlinair could not obtain the contract because BFR was then satisfied with its carrier. In early June, 1978,

---

[1] This opinion provides an abbreviated version of the lengthy and complicated facts contained in the voluminous record in this case. There is much evidence of defendant Lundgren's mishandling of other Berlinair corporate opportunities, misuse of its resources and general breaches of fiduciary duties, but we need not recite the particulars to dispose of this case.

however, Lundgren learned that there was a good chance that the BFR contract might be available. He informed a BFR representative that he would make a proposal on behalf of a new company. On July 7, 1978, he incorporated Air Berlin Charter Company (ABC) and was its sole owner. On August 20, 1978, ABC presented BFR with a contract proposal, and after a series of discussions it was awarded the contract on September 1, 1978. Lundgren effectively concealed from plaintiff his negotiations with BFR and his diversion of the BFR contract to ABC, even though he used Berlinair working time, staff, money and facilities.

Plaintiff, as a minority stockholder in Berlinair, brought a derivative action against ABC for usurping a corporate opportunity of Berlinair. He also brought an individual claim against Lundgren for compensatory and punitive damages based on breach of fiduciary duty.

The trial court found that ABC, acting through Lundgren, had wrongfully diverted the BFR contract, which was a corporate opportunity of Berlinair. The court imposed a constructive trust on ABC in favor of Berlinair, ordered an accounting by ABC and enjoined ABC from transferring its assets. The trial court also found that Lundgren, as an officer and director of Berlinair, had breached his fiduciary duties of good faith, fair dealing and full disclosure owed to plaintiff individually and to Berlinair. The court did not award plaintiff any actual damages on the breach of fiduciary duty claim. All the issues were tried to the court, except that a jury was empaneled to try the punitive damages issue. It returned a verdict in favor of plaintiff and assessed punitive damages against Lundgren in the amount of $750,000. Lundgren then moved to dismiss plaintiff's claim for punitive damages. The court granted the motion to dismiss and, *sua sponte,* entered judgment in favor of Lundgren notwithstanding the verdict on the punitive damages claim.

ABC appeals, arguing that it did not usurp a corporate opportunity of Berlinair. Plaintiff cross-appeals from the trial court's dismissal of the punitive damages claim and from the entry of judgment in favor of Lundgren notwithstanding the verdict on that issue. We review *de novo* and affirm.

ABC rests its appeal on a narrow issue. It contends that the concealment and diversion of the BFR contract was

not a usurpation of a corporate opportunity, because Berlinair did not have the financial ability to undertake that contract. It argues that proof of financial ability is a part of a corporate opportunity case and that plaintiff did not carry that burden. In the alternative, ABC argues that financial inability is a defense in a corporate opportunity case which, when raised by the defendant, shifts the burden to the plaintiff to prove that the corporation did, in fact, have the financial ability to undertake the alleged opportunity.

■    The corporate opportunity doctrine precludes corporate fiduciaries from diverting to themselves business opportunities in which the corporation has an expectancy, property interest or right or which in fairness should otherwise belong to the corporation. The doctrine follows from a corporate fiduciary's duty of undivided loyalty to the corporation. *See American Timber v. Niedermeyer,* 276 Or 1135, 1150, 558 P2d 1211 (1976); *see also generally* Henn and Alexander, *Laws of Corporations* 632-37, § 237 (3d ed 1983). ABC agrees that, unless Berlinair's financial inability to undertake the contract makes a difference, the BFR contract was a corporate opportunity of Berlinair. Therefore, we address the narrow issue of the relevance of a corporation's financial ability to undertake a business opportunity to proving a diversion of corporate opportunity claim.

It is an issue of first impression in Oregon. Courts in other jurisdictions have held that a solvent corporation's financial inability to undertake an opportunity does not absolve a corporate fiduciary from liability for diverting what is otherwise a corporate opportunity. *W. H. Elliott & Sons Co. v. Gotthardt,* 305 F2d 544 (1st Cir 1962); *Irving Trust Co. v. Deutsch,* 73 F2d 121 (2d Cir 1934), *cert den* 294 US 708 (1934); *Guth v. Loft, Inc.,* 23 Del Ch 255, 5 A2d 503 (1939); *Durfee v. Durfee & Canning, Inc.,* 323 Mass 187, 80 NE2d 522 (1948); *Ellzey v. Fyr-Pruf, Inc.,* 376 So 2d 1328 (Miss 1979); *Electronic Development Co. v. Robson,* 148 Neb 526, 28 NW 2d 130 (1947); *Foley v. D'Agostino,* 21 App Div 2d 60, 248 NYS 2d 121 (1964). Some cases have held that a corporation's clear financial inability or insolvency will excuse corporate fiduciaries from liability. *Ellzey v. Fyr-Pruf, Inc., supra; Electronic Development Co. v. Robson, supra; see also Kelly v. 74 & 76 West Tremont Ave. Corp.,* 151 NYS 2d 900, *aff'd* 3 App Div 2d 821, 161 NYS 2d 825 (1956). Two Minnesota cases have held that a

business opportunity is not a corporate opportunity if the corporation is financially unable to take advantage of it. *A.C. Peters Co. v. St. Cloud Enterprises, Inc.,* 301 Minn 261, 222 NW 2d 83 (1974). *Miller v. Miller,* 301 Minn 207, 222 NW 2d 71 (1974). *Miller* suggests in dictum that a plaintiff alleging usurpation of a corporate opportunity should carry the burden of proving that the corporation was financially able to undertake it. *Canion v. Texas Cycle Supply, Inc.,* 537 SW2d 510 (Tex 1976), holds that financial inability is a defense that may be raised by a corporate fiduciary charged with theft of a corporate opportunity, but the fiduciary carries the burden of proving financial inability.

■ ■ We hold that a corporation's financial ability to undertake a business opportunity is not a factor in determining the existence of a corporate opportunity unless the defendant demonstrates that the corporation is technically or de facto insolvent. As the court in *Irving Trust Co. v. Deutsch, supra,* noted, if corporate fiduciaries

> "are permitted to justify their conduct on [a theory of financial inability,] there will be a temptation to refrain from exerting their strongest efforts on behalf of the corporation since, if it does not meet the obligations, an opportunity of profit will be opened to them personally." 73 F2d at 124.

To allow a corporate fiduciary to take advantage of a business opportunity when the fiduciary determines the corporation to be unable to avail itself of it would create the worst sort of temptation for the fiduciary to rationalize an inaccurate and self-serving assessment of the corporation's financial ability and thereby compromise the duty of loyalty to the corporation. If a corporate fiduciary's duty of loyalty conflicts with his personal interest, the latter must give way. *Delaney v. Georgia-Pacific Corp.,* 278 Or 305, 564 P2d 277 (1977); *Young v. Columbia Land & Inv. Co.,* 53 Or 438, 99 Pac 936 (1909). Unless a corporation is technically or de facto insolvent, a determination whether a business opportunity is corporate or personal does not depend on the corporation's relative financial ability to undertake the opportunity. To avoid liability for usurping a corporate opportunity on the basis that the corporation was insolvent, the fiduciary must prove insolvency.

■ ■ The appropriate method to determine whether or not a corporate opportunity exists is to let the corporation decide

at the time the opportunity is presented. If a fiduciary is uncertain whether a given opportunity is corporate or not, or whether the corporation has the financial ability to pursue it, he needs merely to disclose the existence of the opportunity to the directors and let them decide. Disclosure is a fundamental fiduciary duty. It cannot be burdensome, and it resolves the issue for all parties concerned and eliminates the necessity for a judicial determination after the fact.

In the present case, defendants do not contend that Berlinair was technically or de facto insolvent. Although the company has run a deficit since commencing operations in 1977 and periodic infusions of capital have been required, that state of affairs does not constitute technical or de facto insolvency unless there is an imminent threat to the business' continued vitality. Plaintiff offered expert testimony that Berlinair could have obtained adequate financing to secure the BFR contract. Defendants' expert witness, Beyer, an airline management expert, expressed the opposite opinion. However, there is nothing in his testimony or otherwise in the record to suggest that Berlinair was insolvent or was no longer a viable corporate entity. We conclude that ABC usurped a corporate opportunity belonging to Berlinair when, acting through Lundgren, the BFR contract was diverted. Accordingly, the constructive trust, injunction, duty to account and other relief granted by the trial court are appropriate remedies.

We turn now to plaintiff's cross-appeal. He brought a personal claim against Lundgren for breaches of fiduciary duty. Plaintiff sought actual and punitive damages. The actual damages issue was tried by the court. A jury was empaneled to try the punitive damages issue and found against Lundgren, but the court never made an award of actual damages.

The court granted the motion to dismiss and set aside the jury verdict for the reason that punitive damages are not available in equity. *Pedah Company v. Hunt,* 265 Or 433, 509 P2d 1197 (1973), had held that a court of equity cannot award punitive damages incident to the granting of injunctive relief. The stated reason for the rule was that an award of punitive damages by a court sitting in equity without a jury was believed to compromise a court's ability to do justice between the litigants. *Pedah Company v. Hunt, supra,* 265 Or at 436. However, in *Rexnord, Inc. v. Ferris,* 294 Or 392, 657 P2d 673

(1983), after the trial in this case, the court held that a court may award both punitive damages and equitable relief in a single action if the plaintiff pleads and proves a claim which factually would permit an award of punitive damages.

■ ■ We must first determine, therefore, whether plaintiff's individual action against Lundgren for breach of fiduciary duty is the sort of claim that permits an award of punitive damages. Noting that punitive damages are not favored in the law, we nevertheless conclude that a breach of fiduciary duty can be sufficiently reprehensible to justify submitting punitive damages to a jury. *See Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 435 P2d 306 (1967); *McElwain v. Georgia-Pacific,* 245 Or 247, 421 P2d 957 (1966); *2-D's Logging v. Weyerhaeuser,* 53 Or App 677, 632 P2d 1319, *rev den* 292 Or 109 (1981). In the present case, suffice it to say, Lundgren's course of conduct in secretly diverting the BFR contract to his own company, ABC, was certainly sufficiently aggravated to create a jury question as to whether punitive damages should be awarded.

Plaintiff's individual claim against Lundgren sought both actual and punitive damages. Why the court made no award of actual damages does not appear in the record.[2] In Oregon an award of punitive damages is not proper unless there is also an award of actual damages. *Belleville v. Davis,* 262 Or 387, 498 P2d 744 (1972); *Crouter v. United Adjusters, Inc.,* 259 Or 348, 485 P2d 1208 (1971); *Carnation Lbr. Co. v. McKenney et al,* 224 Or 541, 356 P2d 932 (1960). Although we are not aware of any case that has ever explained the rationale for the rule, we are bound by it. Because punitive damages cannot be awarded when actual damages are not, the grant of defendant's motion to dismiss plaintiff's claim for punitive damages against Lundgren was correct.

■ We are perplexed by the trial judge's *sua sponte* entry of a judgment nov in favor of Lundgren on the punitive damages issue. We agree with plaintiff that entry of the judgment nov in the absence of a motion by defendant is precluded by the plain language of ORCP 63.[3] However, entry

---

[2] Neither does the record disclose that any party brought the absence of an award of actual damages to the trial court's attention.

[3] ORCP 63 provides:

of the judgment nov, based as it apparently was on the properly granted motion to dismiss, was harmless error.

Affirmed.[4]

---

"The Court may, *on motion,* render a judgment notwithstanding the verdict, or set aside any judgment which may have been entered and render another judgment as the case may require." (Emphasis supplied.)

[4] Although ABC and Berlinair are named as cross-respondents, no issues are raised as to them on the cross-appeal.