Argued and submitted December 11, 1986, judgment modified and affirmed as modified December 23, 1987, reconsideration denied March 25, petition for review denied April 18, 1988 (305 Or 576)

SEIDERS,
*Respondent,*

*v.*

HEFNER,
dba Michael Hefner Group,
*Defendant,*

*and*

USLIFE LIFE INSURANCE COMPANY
OF CALIFORNIA,
*Appellant.*

(83-08-19,026-L; CA A38385)

747 P2d 1003

H. Clifford Looney, Vale, argued the cause for appellant. With him on the briefs was Butler & Looney, P.C., Vale.

Tim J. Helfrich, Ontario, argued the cause for respondent. With him on the brief was Yturri, Rose, Burnham, Ebert & Bentz, Ontario.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiff brought this action to recover damages allegedly arising out of defendants' breach of fiduciary duty and negligent entrustment of life insurance proceeds. Because defendant Hefner filed for bankruptcy, the action against him was stayed pending the outcome of the bankruptcy court proceeding, and the action proceeded against defendant USLIFE alone. The jury returned a verdict for general and punitive damages[1] on both counts against USLIFE, which appeals from the resulting judgment. We affirm in part and reverse in part.

Plaintiff and her husband, Joe, operated a family farm in Harper. They were approached by Hefner, an independent insurance agent, in 1976 or 1977, about the purchase of life insurance policies, and each of them purchased a policy from USLIFE through Hefner. Hefner also counseled them on estate planning and referred them to an attorney, who prepared wills for them. Hefner maintained a friendly relationship with them, visiting them once or twice each year. In 1980, he ended his relationship with USLIFE. Plaintiff received no notice, and did not know, that that relationship had been terminated.

On August 18, 1981, Joe died. Plaintiff took Joe's USLIFE policy to a funeral home, and an employe of the home sent it to USLIFE on her behalf with a request for claim forms. She also called Hefner and told him that her husband had died; however, she did not ask him to help her obtain the proceeds of the policy. Even though he was no longer selling insurance for USLIFE, the company sent plaintiff's benefit check to Hefner, who called plaintiff and told her that he would deliver the check to her. When he did so, plaintiff believed that he was an agent of USLIFE.

The USLIFE employe who handled plaintiff's claim

---

[1] On Count I, breach of fiduciary duty, the jury awarded plaintiff $40,000 general damages and $25,000 punitive damages, reduced by plaintiff's own fault, which the jury found to be 20 percent. Therefore, the judgment on Count I was for $52,000. On Count II, negligent entrustment, the jury awarded $1 in general damages and $12,500 in punitive damages and found that plaintiff was 50 percent at fault. Accordingly, the judgment on Count II was $6,250.50. No contention is made that plaintiff could recover on only one, not both, counts or that comparative fault was not applicable to the breach of fiduciary duty claim.

testified that the initial notification of Joe's death came from an employe of Hefner and that she had noted that Hefner was no longer selling USLIFE policies. She testified that USLIFE normally sends the checks representing the policy proceeds directly to the beneficiary when the agent who wrote the policy no longer represents the company and when the beneficiary had not authorized the company to send the proceeds to another person. Notwithstanding that general practice, USLIFE sent plaintiff's check to Hefner for delivery to her.

On September 24, 1981, Hefner drove from his office in Beaverton to Harper to deliver the check. At that time, plaintiff still considered him to be an agent of USLIFE. She confided to Hefner that her attorney had advised her to avoid putting all of the $100,000 proceeds in one investment. Hefner, after calling a bank in Vale, told plaintiff that the bank would pay 16.5 percent interest on her deposit. He then said that he would pay her 18 percent interest if she would loan him part of the money. He prepared and signed a promissory note for $40,000, with interest at the rate of 18 percent, and delivered it to plaintiff in return for a check for that amount.

Plaintiff knew that the loan was Hefner's personal obligation and that it was not guaranteed by USLIFE. Hefner did not suggest that the loan be secured, nor did he suggest that plaintiff seek independent financial advice. Plaintiff trusted Hefner because of their prior contacts and because USLIFE had trusted Hefner to deliver the benefit check. Hefner did not repay any of the borrowed money.

On appeal, defendant assigns error to the trial court's denial of its motion to dismiss both Counts I and II of the complaint, which was made before trial, again at the close of plaintiff's case and, finally, after all of the evidence was in. Count I alleges that both defendants were negligent and violated their fiduciary duty to plaintiff in certain particulars relating to the investment advice that Hefner gave her.[2] We

_____

[2] The allegations of fault are:

"In advising and procuring the loan from Plaintiff, Defendants acted negligently and in violation of fiduciary duty and in violation of the duty of good faith and fair dealing in one or more of the following particulars:

"a. In rendering advice concerning the use and investment of insurance

are satisfied that the allegations state a claim for relief against USLIFE, assuming that Hefner was its agent in this matter, and that, as discussed below, the evidence was sufficient to submit Count I to the jury.

■ Count II alleges that USLIFE was negligent in entrusting life insurance *proceeds* to Hefner (a) without notifying plaintiff that he was no longer an agent of USLIFE, (b) without exercising any supervision or control over Hefner, and (c) without plaintiff's consent. Those allegations appear to make it clear that plaintiff relies solely on the alleged negligence of USLIFE in entrusting the *proceeds* to Hefner. Assuming that Count II states a claim, there is no evidence that USLIFE entrusted the *proceeds* to Hefner; it delivered a *check* to him for delivery to plaintiff, to whom the check was made payable, and he delivered it. Both parties appear to have treated Count II as alleging the negligent entrustment of the *check* rather than of the proceeds. Given that treatment by the parties and the evidence supporting it, plaintiff is not entitled to recover on Count II. Even if defendant was negligent in entrusting the check to Hefner, he delivered it to plaintiff; therefore, entrusting the check, even if negligent, did not cause plaintiff's damage. Count II should have been dismissed at the close of plaintiff's case.

■ Defendant's other assignments of error fall into three categories: first, the refusal to give a requested instruction and the giving of another instruction; second, sufficiency of the evidence to support the verdict; and, third, denial of its motion to withdraw punitive damages from the jury.

The trial court refused to give this instruction:

"I instruct you that the person who is an independent insurance agent or broker is the agent of the insured in negotiating for a policy."

---

proceeds when Defendant Hefner had a personal interest in the Plaintiff's decision;

"b. In advising Plaintiff to loan money without providing security in any form for the loan;

"c. In failing to advise Plaintiff of the risks and dangers of the loan to Defendant Hefner;

"d. In failing to advise Plaintiff to obtain independent advice and counsel;

"e. In failing to provide prudent and reasonable investment advice to Plaintiff regarding the use and investment of the insurance proceeds."

Instead, the court instructed:

> "The law of Oregon further provides that any person who solicits or procures an application for insurance shall, in all matters relating to the application for insurance and the policy issued in consequence of the application be regarded as the agent of the insurer issuing the policy, and not the agent of the insured. Any provisions in the application and policy to the contrary are invalid and of no effect whatever."

ORS 744.165 provides that the agent represents the insurer in all matters relating to the application for, and issuance of, the policy. The instruction given mirrors ORS 744.165 and is a correct statement of the law. The requested instruction is contrary to that statute, and the trial court properly refused to give it.

■ ■   One of the main factual issues in this case was whether Hefner was acting as an agent of USLIFE when he delivered the check and procured the loan from plaintiff. USLIFE contended at trial that, because Hefner was an independent insurance broker, rather than a company agent, Hefner was an agent of the Seiderses, rather than USLIFE, when he obtained Joe's policy. Under ORS 744.165, regardless of whether there would have been an agency relationship at common law, Hefner was acting as an agent of USLIFE when he solicited and procured the policies. The establishment of an agency relationship at that time was important, because an agency continues in existence as to a third person until that person has notice or knowledge of its termination. *Cascade Warehouse Company v. Dyer,* 256 Or 377, 379, 471 P2d 775, 474 P2d 325 (1970). The instruction did not, as defendant contends, direct a finding that Hefner was acting as an agent of USLIFE when he obtained the loan from plaintiff. Given defendant's argument that Hefner was plaintiff's agent from the beginning, there was no error in giving the instruction.[3]

Defendant's other assignments relate to the sufficiency of the evidence. Having held that Count II should not have gone to the jury, we now consider Count I. We view the evidence in the light most favorable to plaintiff, the prevailing party. *Brown v. J. C. Penney Co.,* 297 Or 695, 705, 688 P2d 811

---

[3] Defendant also assigns error to an earlier portion of the instructions relating to agency; however, no exception was taken to that part.

(1984). The verdict may not be set aside unless there is no evidence from which the jury could have found the facts necessary to establish the elements of plaintiff's claim. *Brown v. J. C. Penney Co., supra.*

Defendant argues that Hefner's conduct was not within the scope of any actual or apparent authority from the company when he borrowed money from plaintiff. However, there is testimony from both plaintiff's and defendant's witnesses that life insurance agents are not just insurance vendors; they must be knowledgeable in business and finance because, when the agent delivers life insurance proceeds to the beneficiary, it is common for the agent to give financial advice about settlement options and the disposition of the proceeds. The jury could have found that, when Hefner delivered the check to plaintiff, he was acting within the scope of his agency in advising plaintiff how to invest the proceeds. Defendant argues that there was no investment advice, because Hefner was acting for his personal benefit. However, the jury could have found that it was investment advice and that it was within Hefner's apparent authority to give it.

Finally, defendant contends that the trial court erred in denying its motion to withdraw punitive damages from the jury. It does not contend that there is insufficient evidence to permit the jury to award punitive damages against Hefner. It is clear that the evidence is sufficient. *Klinicki v. Lundgren,* 67 Or App 160, 678 P2d 1250 (1984), *aff'd* 298 Or 662, 695 P2d 906 (1985). Rather, it argues that it is not liable for punitive damages for Hefner's conduct. In *Stroud v. Denny's Restaurant,* 271 Or 430, 437, 532 P2d 790 (1975), the court held an employer liable for punitive damages for an employe's conduct. The court said that the "essential inquiry is whether the act was committed while the employe was acting within the scope of his employment." If he was, then it matters not that the act was unauthorized or was not ratified after its commission.

Here, the jury could find that Hefner was the agent of defendant, with express authority to deliver the check to plaintiff, and that he was acting with the apparent, but not the actual, authority of USLIFE when he gave financial advice to plaintiff, resulting in his obtaining a loan from her. Hefner was an agent of USLIFE when he wrote the policies and that

relationship continued as to plaintiff, because she did not have notice or knowledge that Hefner no longer represented USLIFE. *Cascade Warehouse Co. v. Dyer, supra.* Whether Hefner was acting with the actual authority or the apparent authority of USLIFE is immaterial. A principal is liable for injury to a third person resulting from the acts of an agent that are within the apparent authority of the agent when the third person has acted in reliance on the apparent authority. *Reeder v. Kay,* 282 Or 191, 195, 577 P2d 925 (1978). The jury could find that plaintiff relied on Hefner's apparent authority as a USLIFE agent in following his advice to invest part of her insurance proceeds by loaning him $40,000 at a higher interest rate than the bank would pay. The question was properly submitted to the jury.

Judgment modified by deleting award on Count II; affirmed as modified.