## J-P INTERNATIONAL, LTD.,
*Appellant,*

*v.*

## Olcott THOMPSON;
### J.C. Green; Ferder Ogdahl & Thompson;
### International Holding Corporation,
### an Oregon corporation;
### and Roger Morley,
*Defendants,*

*and*

## WESTERN SURETY COMPANY,
*Respondent.*

(88C-11691; CA A69596)

838 P2d 616

Dale L. Crandall, Salem, argued the cause and filed the briefs for appellant.

Thomas H. Tongue, Portland, argued the cause for respondent. With him on the brief were G. Kenneth Shiroishi, Donald E. Templeton and Dunn, Carney, Allen, Higgins & Tongue, Portland.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

## WARREN, P. J.

In this breach of contract action, plaintiff appeals from a final judgment, after a trial to the court, in favor of defendant Western Surety Company (Western). We affirm.

Plaintiff loaned money to Green.[1] As an inducement for that loan, Green told plaintiff that he would secure it with an indemnity bond from Western. Western, however, does not sell indemnity bonds. Nevertheless, Morley, an independent insurance agent who was authorized by Western to sell its insurance products, issued a binder for the bond. He used a general insurance contract form, on which he typed in Western as the insurer, Green as the insured and plaintiff as the loss payee. Morley did not inform plaintiff that Western did not provide such coverage and did not inform Western that he had issued the binder. When Green failed to repay the loan, plaintiff sought to recover on the bond from Western. Western refused to pay, and plaintiff sued for breach of contract.

At the close of defendant's case, plaintiff moved for a determination that, as a matter of law, Western was bound by the binder issued by Morley. It asserted two alternative theories to support that contention. The court denied the motion. Plaintiff assigns that ruling as error, reasserting the arguments that he raised below.[2]

Plaintiff first contends that the court erred in concluding that ORS 744.165 did not establish, as a matter of law, that Morley had authority to issue the binder. ORS 744.165(1) provides:

"Except as provided in a group contract of insurance under subsection (2) of this section, any person who solicits or procures an application for insurance shall in all matters

---

[1] Plaintiff holds its claims by way of an assignment. However, the principals of plaintiff and plaintiff's assignor are the same individuals. Accordingly, we refer to the acts of plaintiff's assignor as the acts of plaintiff.

[2] Plaintiff framed its motion as ORCP 54 motion. Rule 54 provides that a party against whom a claim has been asserted can move to dismiss that claim. *See* ORCP 54B(2); ORCP 60. Plaintiff is not the party against whom a claim has been asserted. Therefore, plaintiff obviously was not seeking a judgment of dismissal. What plaintiff was seeking to do was establish part of his claim as a matter of law. In a jury trial, the proper procedure is a request for a preemptory jury instruction. *See NW Pac. Indem. v. Junction City Water Dist.*, 296 Or 365, 372 n 1, 677 P2d 671 (1984). For our review, we treat plaintiff's motion as a request to have an issue decided as a matter of law. *See Childers v. Spindor*, 91 Or App 119, 122 n 3, 754 P2d 599 (1988).

relating to the application for insurance and the policy issued in consequence of the application be regarded as the agent of the insurer issuing the policy and not the agent of the insured. Any provisions in the application and policy to the contrary are invalid and of no effect whatever."

Plaintiff argues that that statute makes an insurance company liable for all acts of its authorized agents relating to the application and issuance of an insurance policy. Western contends that it only establishes the existence of an agency relationship, but does not determine the extent of the agent's authority.

We must construe ORS 744.165 "consistent[ly] with the objective for which it was enacted * * *." *Paulson v. Western Life Insurance Co.*, 292 Or 38, 60, 636 P2d 935 (1981). Before the enactment of the statute,[3] insurers had attempted to shield themselves from liability for the representations and malfeasance of those authorized to sell their product by disclaiming in their policies any agency relationship. The legislative history reveals that the legislature intended the statute to nullify those disclaimers and to establish the existence of an agency relationship between insurers and those who sell their products. Nothing in that history indicates that the legislature sought to prevent insurers from asserting that an agent lacked authority to act for it in a particular transaction.[4] Accordingly, we decline to impute such an intent to the legislature. ORS 744.165 does not determine the scope of an agent's authority.

■   Whether an agent's acts are authorized is a question of fact. *See Start v. Shell Oil Co. and Arntson*, 202 Or 99, 118, 260 P2d 468, 273 P2d 225. Accordingly, plaintiff was not entitled to a ruling that Morley was acting within the scope of his authority as a matter of law, unless reasonable minds

_____

[3] For a discussion of the history of ORS 744.165, see *Paulson v. Western Life Insurance Co., supra.*

[4] We implicitly recognized that ORS 744.165 does not establish the scope of an agent's authority in *Seiders v. Hefner*, 89 Or App 55, 61, 747 P2d 1003, *rev den* 305 Or 576 (1987), where we concluded that it was within the province of the jury to determine whether a person was an agent under ORS 744.165 and, if so, whether the agent's acts were authorized. Had we concluded that ORS 744.165 determines the scope of an agent's authority, it would have been unnecessary for us to consider whether the evidence was sufficient to submit the question of the agent's authority to the jury.

would necessarily conclude that he was. *See Jones v. Oberg*, 52 Or App 601, 608, 628 P2d 773, *rev den* 291 Or 662 (1981).[5]

> " 'A general agent for a disclosed or partially disclosed principal subjects his principal to liability for acts done on his account which usually accompany or are incidental to transactions which the agent is authorized to conduct if, although they are forbidden by the principal, the other party reasonably believes that the agent is authorized to do them and has no notice that he is not so authorized.' " *Croisant v. Watrud*, 248 Or 234, 239, 432 P2d 799 (1967). (Citation omitted.)

The binder was issued to protect plaintiff from the risk presented by Green. Accordingly, under the "inherent authority" test, the question is whether it was reasonable for plaintiff to assume that Morley had the authority to issue the binder.

The evidence shows that plaintiff never met Morley, knew nothing about him except what Green and Green's attorney divulged and talked only briefly with Morley on the phone. Moreover, the binder was issued on a questionable form that did not appear to be designed to be used for the type of insurance plaintiff sought, and the loan transaction that plaintiff sought to insure was highly speculative. Because those facts could lead a reasonable juror to find that Morley was not authorized to issue the binder, plaintiff was not entitled to a ruling on that fact as a matter of law.

Affirmed.

---

[5] Plaintiff does not challenge the sufficiency of any of Western's evidence. Instead, it contends that the evidence presented leads to only one possible conclusion.