Argued and submitted November 5, 1993; resubmitted In Banc September 7, reversed on appeal and remanded with instructions; affirmed on cross-appeal October 26, 1994, petition for review allowed February 28, 1995 (320 Or 587)
See later issue Oregon Reports

## BUILDING STRUCTURES, INC.,
### an Oregon corporation,
*Appellant - Cross-Respondent,*

*v.*

## Gary C. YOUNG,
### Melody Young, and
### Young Equipment Sales Co., Inc.,
### an Oregon corporation,
*Respondents - Cross-Appellants.*

### (90-9-141; CA A71758)

883 P2d 1308

In Banc*

W. Theodore Guthrie argued the cause for appellant - cross-respondent. With him on the briefs was Paul J. Rask.

James P. Molloy argued the cause for respondents - cross-appellants. With him on the briefs were Rick T. Haselton and Lindsay, Hart, Neil & Weigler.

LANDAU, J.

Rossman, J., dissenting.

---

* Haselton, J., not participating.

## LANDAU, J.

Plaintiff Building Structures, Inc. (BSI) brought this action seeking damages arising out of the construction of a commercial structure. The claims included breach of contract, *quantum meruit* and fraud. A jury found for BSI on the breach of contract and fraud claims,[1] and the trial court granted defendants' motion for a new trial on the fraud claim. We reverse on BSI's appeal and affirm on defendants' cross-appeal.

Defendants Gary Young (Young) and Melody Young are principals of defendant Young Equipment Sales Co., Inc. (Young Equipment), a company engaged in the manufacture and sale of semi-trailer units. BSI had been in nonresidential construction for 17 years, building projects on a design-built or negotiated basis in which project specifications determined the costs. Typically, BSI consults with its customers in order to balance the design specifications against cost.

In early 1990, defendants contacted BSI regarding construction of a new building. On March 28, Young met with Larry and Jeff Smith of BSI. They discussed whether BSI's services could be used to meet Young Equipment's needs. The Smiths indicated that they would be interested in the project only if they could do both the design and construction. They told Young that they were only interested in negotiating, not bidding on, the project, and they explained how they would generate the cost figure. The parties signed a one-page "Agreement" which provides, in its entirety:

> "The purpose of this agreement is to establish the use of Building Structures, Inc., (BSI) by Gary Young, for construction of Young Equipment and/or other related sitework to be located at Sandy, Oregon.
>
> "Building Structures is to act as Project Manager/General Contractor and will retain the architect and engineers and coordinate the design services and obtain all permits. At the time of actual construction, a contract based on maximum not-to-exceed costs will be negotiated. Any monies paid to BSI under this agreement will be included in the construction contract and credited to owner's account.

---

[1] The jury verdict in the breach of contract claim precluded consideration of the *quantum meruit* claim.

"Gary Young will compensate Building Structures based on actual cost, not including taxes, plus ten percent for general overhead, plus five percent for fee. Payments will be made on a monthly progress basis. Any applicable taxes will be paid by owner in addition to the above."

The agreement was signed and BSI made preliminary drawings. In early May, Young and the Smiths negotiated over the price and scope of the projected construction. On June 15, BSI presented a "construction estimate printout" based on revisions and deletions from the original design. Young objected to the price of $245,126. BSI did not know that Young had been in touch with other contractors, one of whom had quoted a price of $200,000.

On May 24, at the design review meeting, Young introduced BSI as the project builders. The City of Sandy approved BSI's design, and, after the meeting, BSI told Young that it would proceed with the construction drawings and request building permits. Young agreed. On June 25, defendants entered into a contract with another business for the construction of the building. Young told BSI about that contract after BSI personnel discovered the other builder working at the site. The completed building was substantially the same as the one designed by BSI.

BSI then brought this action, asserting that defendants had wanted BSI to perform only preliminary design work on the project and, although representing otherwise, had never intended to have BSI construct the building. Defendants admitted liability under the *quantum meruit* theory for the value of the design work, but denied liability for breach of contract and fraud. The jury returned a verdict for BSI on the breach of contract claim and awarded damages of $23,450. The jury also found defendants liable for fraud and returned a verdict form reading:

"What is the amount of [BSI's] damages as a result of defendants' fraud?

"Answer     $ -0-                (General Damages)
"Answer     $51,550.00       (Punitive Damages)"

Neither party objected and the jury was dismissed. Judgment was entered and defendants filed timely motions for judgment notwithstanding the verdict and for a new trial

on both claims. The trial court denied the motions as to the breach of contract claim. It also denied the motion for judgment notwithstanding the verdict on the fraud claim but allowed the motion for a new trial on the fraud claim. The trial court held that, as a matter of law, the award of punitive damages was erroneous, because the jury failed to award compensatory damages. The court entered an amended judgment.[2]

■   BSI assigns error to the grant of defendants' motion for a new trial on the fraud claim. The parties recognize that punitive damages are not recoverable in the absence of proof of actual damages. *Crouter v. United Adjusters, Inc.*, 259 Or 348, 364, 485 P2d 1208 (1971). BSI contends, however, that the rule does not apply here, because defendants waived any objection to the verdict by failing to challenge it before the jury was discharged. BSI argues that case law shows that the aggrieved party must object to any irregularity or ambiguity of a verdict before it is received. *See Fischer v. Howard*, 201 Or 426, 463-64, 271 P2d 1059 (1954); *Marquam Investment Corp. v. Myers*, 35 Or App 23, 27, 581 P2d 545, *rev den* 284 Or 341 (1978). BSI contends that defendants were the aggrieved party and that a timely objection here would have allowed the jury to correct the verdict.

Defendants argue that, although generally an aggrieved party must object to a defective verdict before it is received, in this case it is plaintiff who was the aggrieved party. Accordingly, they conclude, they waived nothing when they stood mute as the jury returned the defective verdict.

■   The general rule, as stated in *Mullins v. Rowe et ux*, 222 Or 519, 524, 353 P2d 861 (1960), is:

"(1)   The time to object to a defective verdict, if it is defective, is while the jury is still on hand so that the trial court can resubmit the matter with proper instructions.

"(2)   An objection not taken when the verdict is returned into court is waived.

"(3)   The only correct procedure to follow is to resubmit the matter to the same jury."

---

[2] The court later entered a second amended judgment under ORCP 67B pursuant to ORS 19.033(4).

In *Smith v. J. C. Penney Co.*, 269 Or 643, 525 P2d 1299 (1974), the Supreme Court applied that rule to facts not entirely dissimilar to those in this case. The jury returned a verdict for the plaintiff that was internally inconsistent. The defendant said nothing until after the jury was dismissed. The defendant then moved for judgment *n.o.v.*, on the ground that the jury verdict was inconsistent, that is to say, legally insufficient. The Supreme Court said that

> "if no objection is raised to a faulty verdict at the time it is returned, a party is foreclosed from subsequently attacking the verdict." 269 Or at 653.

■       Similarly, in *Marquam Investment Corp. v. Myers, supra,* the jury returned an inconsistent verdict in favor of the plaintiff, to which the defendant entered no objection. When the defendant attempted to obtain a new trial on the basis of that defect in the verdict, we said:

> "The time to correct the verdict was when the jury was still present and the court could resubmit the question for determination. Allowing a patently inconsistent verdict to stand and then, after the jury is discharged, seek to take advantage of the inconsistency is impermissible." 35 Or App at 28. (Citation omitted.)

In this case, defendants allowed a patently defective verdict to stand. Then, after the jury was discharged, they sought to take advantage of the defect. As in *Smith* and *Marquam*, that sort of "laying in the weeds" is impermissible.

Defendants do not address the applicability of *Mullins, Smith* and *Marquam*. They merely argue that, because the verdict was defective, as a matter of law, it was up to BSI—not defendants—to object. Defendants' failure to come to grips with *Mullins, Smith* and *Marquam*, however, is fatal to their argument. In *Smith*, for example, as in this case, the verdict was defective as a matter of law, and still the Supreme Court said that it was up to the defendant to object or be foreclosed from subsequently attacking the verdict. There simply is no basis for concluding that defendants in this case should be treated differently than the Supreme Court treated the defendant standing in the same predicament in *Smith*.

■       Defendants argue that an alternate basis for affirming the trial court's grant of a new trial is BSI's failure to

prove its fraud claim. They argue that BSI failed to prove that, at the time Young executed the agreement, defendants did not intend to honor their obligations under the agreement. We disagree. There was evidence from which the jury could conclude that defendants did not intend to be bound by the agreement, which provided that BSI would construct the building. That evidence included Young's testimony that he did not want BSI to manage the entire project or to act as general contractor. The trial court erred in granting a new trial and failing to enter judgment on the verdict.

Defendants cross-appeal, assigning error to the court's denial of their motions for a directed verdict on the breach of contract and fraud claims. Defendants made their motions at the close of plaintiff's case. Those motions were denied and defendants presented their evidence. They did not renew their motions for directed verdict at the close of all the evidence.

Generally, a motion for a directed verdict is a prerequisite for a claim of error based on a failure of evidence. *See Arena v. Gingrich*, 305 Or 1, 8 n 1, 748 P2d 547 (1988). BSI argues that defendants failed to preserve their claim of error by not moving for a directed verdict at the close of all the evidence. Citing *Kilgore v. People's Savings & Loan Assn.*, 107 Or App 743, 746, 814 P2d 163 (1991), *rev dismissed* 313 Or 300 (1992), defendants argue that motions for directed verdict made at the close of a plaintiff's case and at the close of all the evidence are "independently appealable." However, in *Kilgore*, unlike here, the defendants had moved for a directed verdict at the close of the trial, although their assignment of error was based on the denial of their motion for a directed verdict at the close of the plaintiff's case.

Before the enactment of ORCP 60, which addresses directed verdicts, a challenge to the sufficiency of a plaintiff's evidence was made by motion for non-suit. *Former* ORS 18.230(1)(c) (*repealed by* Or Laws 1979, ch 284, § 199). Case law addressing the reviewability of the denial of a motion for a non-suit does not suggest that reviewability was predicated on a motion for directed verdict, even though such a motion was often made. *See, e.g., Gordon Creek Tree Farms v. Layne et al*, 230 Or 204, 358 P2d 1062, 368 P2d 737 (1962). Rather, a defendant's decision to present evidence after a denial of a

motion for a non-suit permitted the appellate court to consider whether the defendant's evidence cured any defect in the plaintiff's case. *See, e.g., Johnson v. Underwood et al,* 102 Or 680, 688-89, 203 P 879 (1922); *Weygandt v. Bartle,* 88 Or 310, 313, 171 P 587 (1918).

■ Although ORCP 60 eliminated non-suits, neither the text nor context of ORCP 60 suggests that enactment of the rule was intended to alter appellate review. The effect of the change was explained by the staff of the Council on Court Procedures:

> "The proper motion to test sufficiency of the evidence in a jury case, at the close of the plaintiff[']s case, or any other time before submission to the jury, is for directed verdict. The major changes from the non-suit practice is that a directed verdict at the close of the plaintiff's case would be a dismissal with prejudice, whereas the non-suit was not." *Oregon Rules of Civil Procedure: 1994 Handbook* 171.

We conclude that we may review defendants' assignment of error here. As we did in *Kilgore v. People's Savings & Loan Assn., supra,* we consider all the evidence.

■ Defendants argue that the court erred in denying their motion for directed verdict on the contract claim, because the evidence did not establish that the parties had an enforceable construction contract. The general rule is that

> "before there can be a valid contract there must be a meeting of the minds as to all of its terms; that nothing can be left for future negotiation, and that if any portion of the contract is not agreed upon, or if no method is agreed upon by which such a term or provision can be settled, there is no contract." *Phillips v. Johnson,* 266 Or 544, 555, 514 P2d 1337 (1973).

Defendants contend that the agreement here did not include the essential terms of price and scope and was only an "agreement to agree." They concede that the agreement contained a formula for determining BSI's compensation. However, they argue that the formula was to be "capped" by the "maximum not-to-exceed costs" price, which was to be negotiated in the future and that the cap was never agreed upon. Furthermore, defendants contend, it was impossible to tell the scope of the work from the agreement. Therefore, they argue, because the parties were never able to agree on the price or scope of the work, there was no contract.

BSI acknowledges that the terms of the agreement did not include the maximum cost or specifications for the building. However, BSI contends that there was ample evidence before the jury that, at the time defendants breached the contract, the terms of the agreement were sufficiently specific to be enforceable.

In *Adair Homes, Inc. v. Jarrell*, 59 Or App 80, 650 P2d 180 (1982), the parties negotiated for the construction of an office building and, after reaching general agreement, they executed a contract. That contract specified a total price for the job that was subject to approval by the plaintiff's president. However, both parties understood that additional changes would be made in the price and probably in the specifications for the building. Structural and price changes were made, and the president signed a document reflecting those changes. A few days later, the defendant notified the plaintiff that he wanted to cancel the contract because he was dissatisfied with the building location and because of financing problems. Shortly thereafter, the plaintiff discovered that someone else was constructing the building in accordance with the plans prepared by the plaintiff.

The defendant argued that the agreement was too indefinite to be enforced, because the parties had not agreed on all the essential terms, particularly the price. We considered the conduct of the parties and held that, although the price had not been settled when the parties agreed on specifications, that failure did not mean that the price was subject to negotiation. Rather, the parties knew that the plaintiff's profit margin, which had been determined, was to be preserved:

> "Although the parties might eventually have disagreed as to those costs, [which would reduce the price,] the correct figure was, nevertheless, a question of fact, rather than a term to be decided by negotiation, and plaintiff had the usual obligation of good faith, which required it to compute that figure accurately. The contract price was substantially more definite than a 'reasonable price.' " *Adair Homes, Inc. v. Jarrell, supra,* 59 Or App at 84.

The situation here is analogous. From the beginning, the Smiths made it clear that BSI had no interest in the project unless it could do both the design and construction,

and that BSI would not bid on the project. With that understanding, the parties signed the agreement, which stated that BSI was to construct the project. BSI began work, the parties negotiated the scope of the work and BSI made changes in the original plans. The jury could find that defendants agreed with the building specifications. BSI submitted drawings to the City of Sandy. Those drawings were approved with minor changes. Young then "shared" the preliminary design with another contractor, and the building that was constructed was substantially the same as the one designed by BSI.

Furthermore, although the agreement did not have a final price, it did have a pricing formula for calculating that figure: cost plus 10 percent overhead, plus 5 percent profit. There was evidence from which the jury could conclude that, at the time defendants breached the agreement, the terms were sufficiently specific to be enforceable. The trial court did not err in denying defendants' motion for directed verdict on plaintiff's contract claim.

Defendants also argue that the court erred in denying their motion for a directed verdict on BSI's fraud claim. They contend that BSI failed to prove that, when Young executed the agreement, defendants did not intend to honor their obligations under that agreement. We have already rejected that argument, concluding that the record contains evidence to the contrary. The trial court did not err.

In the alternative, defendants argue that the trial court erred in granting a new trial on the fraud claim rather than entering a judgment *n.o.v.* Because of our disposition of the preceding assignments, we need not address that argument.

Reversed on appeal and remanded with instructions to enter judgment on the verdict; affirmed on cross-appeal.

**ROSSMAN, J.,** dissenting.

I dissent from the majority's holding on appeal that, because defendants did not object to the verdict before the jury was dismissed, they waived their right to object to entry of a judgment based on that verdict. The majority apparently bases its holding on the assumption that a verdict awarding punitive damages without actual damages is *per se* defective. I

do not agree. As defendants correctly point out, the jury returned a "facially sufficient verdict which, as a matter of law, awarded no damages."

Neither party disputes that punitive damages cannot be awarded without an award of actual damages. That is another way of stating the rule that punitive damages are not recoverable in the absence of *proof* of actual damages. *Crouter v. United Adjuster, Inc.*, 259 Or 348, 364, 485 P2d 1208 (1971). A proven discrete, discernible harm must underlie any punitive damages award. *Klinicki v. Lundgren*, 298 Or 662, 686, 695 P2d 906 (1985). Under that rule, the verdict here, which awarded BSI only punitive damages, means that the jury did not find that BSI proved a discrete, discernible harm on its claim for fraud. Thus, insofar as defendants were concerned, the verdict was not defective; it was a verdict for them.[1] In other words, defendants were not "aggrieved" by the verdict. If BSI did not agree that that was what the jury intended, it was incumbent on BSI – not defendants – to ask the jury to correct any alleged defect.

The effect of the majority's opinion is that a defendant now will be required to ask the judge to resubmit a verdict which is in the defendant's favor. That result is illogical to me and, I submit, will also be illogical to trial attorneys. That result is also not dictated by the cases relied on by the majority, none of which involved a verdict awarding punitive damages.

Closer to the question before us, and supporting the conclusion opposite to the majority's, is *Klinicki v. Lundgren, supra.* There, *inter alia*, the plaintiff brought a personal claim for breach of fiduciary duty against the defendant Lundgren. The plaintiff sought actual and punitive damages. The trial court tried the actual damages issue and found that Lundgren had breached his duty. However, the trial court made no award of actual damages against Lundgren. A jury then tried the punitive damages issue and found against Lundgren, but the court never made an award of actual damages. Four months after the verdict, Lundgren moved to

---

[1] *See Robin v. Knuth*, 108 Or App 207, 815 P2d 704 (1991) (trial court erred in refusing to accept jury's verdict finding for plaintiff on breach of contract claim but awarding plaintiff "$ 0" in damages; under ORCP 61A(2), the verdict was legally sufficient).

dismiss the plaintiff's claim under ORCP 21A, asserting mainly that the plaintiff was not entitled to general damages and therefore could not recover punitive damages. 298 Or at 685. The trial court set aside the punitive damages verdict and *sua sponte* entered a judgment notwithstanding the verdict in favor of Lundgren on the punitive damages issue. Both we and the Supreme Court affirmed.

As we noted in our opinion, *Klinicki v. Lundgren*, 67 Or App 160, 167 n 2, 678 P2d 1250 (1984), the record did not show that any party brought the absence of an award of actual damages to the trial court's attention. Despite that failure to object before the verdict was received, neither we nor the Supreme Court held that Lundgren had waived the right to challenge the punitive damages four months after the jury was discharged.[2]

*Klinicki v. Lundgren, supra*, is analogous to the circumstances here. ORCP 64B(5) allows a new trial if the verdict is "against law." The verdict here was legally erroneous. I would hold that the trial court did not err in granting a new trial.

Deits, De Muniz and Leeson, JJ., join in this dissent.

---

[2] *Rhodes v. Harwood*, 273 Or 903, 544 P2d 147 (1975), did involve an issue of a timely objection to a verdict which awarded punitive damages but only nominal general damages. The plaintiff argued that the defendant had not objected to the verdict before the jury was discharged. The Supreme Court held that the defendant had. The trial court understood that the defendant had a continuing objection because he had objected to the initial verdict which awarded punitive damages but no general damages, and had objected to resubmitting the case to the jury. There was no error, however, because the punitive damages were awarded on a claim for trespass, in which proof of actual damages is not required. Actual damages are presumed to exist.

It does not appear from the opinion that the defendant's assignment of error was grounded on a post-trial motion, as is the issue here. In the light of *Klinicki v. Lundgren*, I cannot read *Rhodes* to dictate the result reached by the majority.